DAVID L. HOUGH, Plaintiff in Error, v. JOHN HASTINGS, Defendant in Error.

ERROR TO LA SALLE.

Section one hundred and sixty-five of the township organization law, requiring the town collector to return a list of taxes not collected to the county treasurer, and make oath before the county treasurer, or, in case of his absence, before any justice of the peace, that the sums mentioned in the list remained unpaid, must be strictly complied with; and when such oath is made before the county clerk, it will invalidate all of the proceedings, and, of course, the sale for taxes.

The 141st section of the same act, requiring the assessor, town clerk and supervisor to attend at the time and place specified in the notice, and, on the application of any person considering himself aggrieved, review the assessment, etc., is imperative; and without such a meeting, no tax payer can be bound by any assessment. Where one party proved that the town clerk was present at no such meeting, it throws on the other party the burden of proving that the other two complied with the law, if it is conceded that two had the power to act.

The owner of the land upon the trial of a tax title has the right to raise objections of the above character.

THIS was an action of ejectment, brought by Hough against Hastings, to recover the S. W. qr. Sec. 15, T. 33 N., R. 1 E. 3d P. M., which Hough claimed in fee.

The declaration, which was in the usual form, was filed at the November term, 1856, of the La Salle Circuit Court. The defendant pleaded the general issue.

At the February special term, 1857, of said court, by agreement of parties, a jury was waived, and the cause submitted to HOLLISTER, Judge of said court, for trial.

On the trial, the plaintiff offered in evidence a record of a judgment for taxes, rendered by the county court of La Salle county, at the June term, 1852, for the state, county and town taxes of 1851, which record, so far as it relates to the land in controversy, is conceded to be, in all respects, formal and sufficient on its face, except that it does not show *at what place* the court was held.

The plaintiff then gave in evidence a precept issued on said judgment, which followed the judgment and conformed to it in all respects, and was given in evidence without objection.

The plaintiff then gave, in evidence, an affidavit of himself, and a notice thereto attached, made in compliance with Sec. 4, Art. 9, of the constitution, which affidavit and notice are set out at large on pages 17, 18 and 19 of the record.

The plaintiff also proved that said affidavit was duly recorded in the county clerk's office on the 20th of June, 1854.

The plaintiff then gave in evidence a deed of the sheriff of said county to said plaintiff, for the land mentioned in the declaration, which deed is set out at large on pages 21, 22 and 23 of the record. The deed recites the judgment for taxes,

the issuing of the precept, the sale to plaintiff, and the making of the affidavit of notice.

The defendant then offered in evidence a patent from the United States to John Dement. The plaintiff objected to the introduction of the patent; the court overruled the objection, and admitted the patent in evidence, and the plaintiff excepted.

The defendant then offered in evidence a copy of the record of a deed from John Dement and wife to Charles Dement, for the land sued for. It purports to have been acknowledged before Edwin M. Hine, a notary public of Lee county, Illinois, under his notarial seal; but only the record copy of the certificate of acknowledgment was offered. The defendant also, in connection with said copy, offered his own affidavit that the original deed was not in his possession.

The defendant then offered in evidence a deed from Charles Dement to the defendant, dated June 15, 1855, for the land in controversy, purporting to have been acknowledged before a notary public in Lee county, under his notarial seal.

The defendant then proved that he had paid the State, county and town taxes on said land for 1856.

The defendant then called Samuel W. Raymond, who testified that he was county clerk of La Salle county, and had been since 1850; that he had examined the records of said office, so far as they show anything in relation to the taxes on the land in controversy. The defendant then asked the witness to "state whether any taxes appeared to be due on the land in controversy, by the records in the county clerk's office." The plaintiff objected to the question; the court overruled the objection and permitted the witness to answer the question, and the plaintiff excepted. The witness replied to the question, that there appeared to be no taxes due on the land prior to 1856; the delinquent list for that year was not yet returned. He also testified that the land sued for was in the town of Meriden, in said county, in 1851.

The defendant then proved by Raymond that a paper shown him was the only return of delinquent taxes for 1851, for the town of Meriden, on file in his office. The paper referred to contained no heading, and was nothing more than a list of lands and town lots, in which the land in controversy was set down in the following form:

| Name of owner. | Part of section | Sec. | T. | R. | Acres. | Val. per acre. | Total value. | Road tax. | State tax. | Co. tax. | T. tax. | Total tax. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| John Dement. | S.W. qr. | 15 | 36 | 1 | 160 | $1.25. | $200 | | 1.21 | 1.10 | 14 | 2.45 |

was not signed by the town collector, but there was attached to the front of said list an affidavit, sworn to before said Raymond, which was as follows:

Hough *v.* Hastings.

"STATE OF ILLINOIS, }
  *La Salle County.* }

" Carren Doane, collector of the town of Meriden, in the said county of La Salle, being duly sworn, says, that the annexed is a full and true list and description of all the taxes contained in the tax bill annexed to the warrant delivered to him, which remain uncollected; that the several sums mentioned in this delinquent list remain uncollected; and that he has made diligent inquiry, and has not been able to discover any goods or chattels belonging to or in the possession of the person or persons charged with or liable to pay the said several sums, whereon he could levy the same.　　　　　　　　　　　　CARREN DOANE.

" Subscribed and sworn to before me this 16th day of February, A. D. 1852.

　　　　　　　　　　　　　　" S. W. RAYMOND, *Clerk.*"

The plaintiff objected to the introduction of said list, but the court overruled the objection and admitted said list, and plaintiff excepted.

The defendant then proved that the board of supervisors, at their annual meeting, by an order entered of record, ordered that $41.56 be assessed on the taxable property in the town of Meriden for town purposes in 1851. He further proved that the items of town tax on said property, as extended for 1851, amounted to $43.85 upon the whole of the taxable property of said town. The total valuation of taxable property in Meriden for that year was $64,242, and the assessed valuation of the land in controversy for that year was $200.

The defendant then proved by Raymond that he, as county clerk, extended the taxes for 1851 on the assessment roll, after the adjournment of the board of supervisors; that the warrant attached to the list for the town collectors was signed by the chairman of the board in blank during the session of the board, and the witness, as county clerk, filled the blanks and extended the taxes after the adjournment of the board. It was also proven that said extension was not submitted to the board while sitting as a board.

The defendant then offered in evidence the delinquent list for 1851, filed by the treasurer in the county clerk's office May 14th, 1852, on which the treasurer's oath in the form required by law was indorsed; sworn to on the 18th of May, 1852, in which list the land in controversy was set down as follows:

| NAMES OF OWNERS. | NO. OF ACRES. | DESCRIPTION. | SEC. | TOWN. | RANGE. | VAL. | TOTAL TAX. | COST. |
|---|---|---|---|---|---|---|---|---|
| Eli B. Baker...... | 80 | E½SW¼ | 8 | 36 | 1 | 100 | 1.23 | 12 |
| John Dement...... | 160 | NE | 8 | 36 | 1 | 200 | 2.45 | 12 |

It was conceded by the parties that said list was regular in every respect, except that the land in controversy was not set

down in it otherwise than as above shown; that the treasurer's return under oath concerning the same was made on the 18th of May, instead of on the first day of the term at which judgment was rendered; that it was made on the list instead of on the *record* of the list; and that the erasures on the list were made as hereafter stated.

The witness, Raymond, then testified that there was no other return under oath made by the treasurer in reference to delinquent lands, except the one on the said list, filed May 14, 1852, which return was sworn to May 18, 1852; that there was no written report made by the treasurer on the first day of the term at which judgment was prayed other than a check list, kept by the treasurer, of taxes paid after the filing of the delinquent list, and before said first day of the term. This check list was brought in by the treasurer on the first day of the term, and he and the county clerk compared the check list with the delinquent list and the record thereof, and when any tract or lot had been paid on since the filing of the delinquent list, that fact was noted on the record and on the delinquent list, either by marking it paid or drawing a line across the tract; but the check list was not signed by the treasurer, nor filed in the county clerk's office. The record of the delinquent list was made by the county clerk, and was a copy of the delinquent list filed May 14, 1852; and the oath of the treasurer, at the foot of said list, made May 18th, was copied on to the record by the clerk.

On cross-examination, Raymond testified that the excess of town taxes for the town of Meriden was little more than sufficient to cover collector's fees; that he intended, in extending the tax, to cover cost of collection; that he took the nearest fraction, as a basis or ratio, that would cover the amount; that he used the fraction seven-tenths of a mill on the $100 in extending; six-tenths of a mill would not have been sufficient to cover the $41.56; the excess was less than one-tenth of a mill on $100; that it has been the practice for the county clerk to extend the taxes after the board of supervisors adjourned; it takes from six to eight weeks to extend the taxes and add and correct them; that the tracts on which taxes were paid subsequent to the filing of the delinquent list, and before judgment, were marked "pd," and a line drawn through them on the delinquent list and the record of the list, from the check list kept by the treasurer. Those that were paid on, subsequent to judgment and before sale, were marked thus, "X," on the record.

It was also proven that this record of the delinquent list, with the *placita*, heading and order of the court, afterward put on, constituted the judgment.

The defendant then called John Rose as a witness, who

testified that he was town clerk of Meriden in 1851. The defendant then asked Rose, "Was there any meeting of the town clerk, assessor and supervisor of said town in 1851 in relation to hearing complaints about the assessment?" The plaintiff objected to this question; the court overruled the objection, and plaintiff excepted. Rose then testified that he heard of no such meeting, and thought he would have been likely to hear of it had any such taken place; that he was not notified of any such meeting, and did not attend any such.

On cross-examination, Rose testified that he lived on the north line of the town, the assessor lived five miles south of him, and the supervisor about a mile south of the assessor; that he saw the assessor and supervisor possibly once a month, and never heard of their having a meeting.

The above was all the testimony.

The court found the issues for the defendant. The plaintiff moved for a new trial; the motion was overruled and the plaintiff excepted. The court then rendered judgment for the defendant, and the plaintiff brings the case to this court on a writ of error.

B. C. Cook and W. H. L. Wallace, for Plaintiff in Error.

Leland and Leland, for Defendant in Error.

Caton, J. A great number of points were argued at the bar in the discussion of this case, but we shall confine our opinion mainly to two, which have not before been considered by this court, and which are decisive of the merits of the whole case.

The oath of the town collector to his return of the delinquent list was made before the clerk of the county court, when the statute expressly required that the oath should be taken before the county treasurer or some justice of the peace. Section one hundred and sixty-five of the township organization law, requires the town collector to return a list of taxes not collected to the county treasurer, "and on making oath before the county treasurer, or in case of his absence, before any justice of the peace, that the sums mentioned in the list remain unpaid," etc. This statute prescribes a particular rule for this special case, and supersedes any general provision, by which it is supposed that the county clerk is authorized to administer the oath. It is mandatory and exclusive, and must be complied with, in order to make the proceeding valid and binding upon the party whose land is taxed.

The circuit court found, and we think upon sufficient evidence, that the one hundred and forty-first section of the same

act was not complied with. That section provides that, "The assessor, town clerk and supervisor shall attend at the time and place specified in the notice, and on the application of any person conceiving himself aggrieved they shall review the assessment," etc. The witness, Rose, testified that he was town clerk of the town in which the land in controversy was situated, and that he heard of no such meeting and thought he should have heard of it had such a meeting been held. That he received no notice 'to attend such a meeting and attended none. He also testified that he lived about five miles from the residence of the assessor and six miles from that of the supervisor. This proof we think sufficient to throw the responsibility upon the opposite party to show that a meeting was held by the two other members of the board of revisors, even admitting, that a meeting by two of the three officers prescribed by the law would have been sufficient. The statute prescribing such meeting is not merely directory but is imperative, as much so as that the property should be originally assessed by the assessor. It was a tribunal established by law, to which the owner of property might appeal from the assessment made by the assessor, with authority to reduce the assessment. A right to a hearing before these revisors, was granted by the law to every tax payer, and if deprived of this right he could not be bound by the assessment. The right of the owner of the land to raise objections of this character, upon the trial of the tax title, has been repeatedly settled by the decisions of this court and will not be reconsidered now. The description of the premises in the patent and deed from Dement are sufficient.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*