THE PEOPLE *ex rel.* Charles Gerstkemper

*v.*

LOTS IN ASHLEY.

*Filed at Mt. Vernon September 28, 1887.*

1. TAXATION— *assessment—by whom—and herein, of the power of review.* The assessor, alone, is the person or officer who can, in the first instance, determine the value of property for taxation; and no appeal to or right of review by any tribunal, other than the boards mentioned in the statute, is given.

2. The courts are powerless to revise an assessment or change or set aside a valuation of property made by an assessor, or by the boards authorized by law to review the same, where the assessment has been honestly

made upon property subject to taxation, and upon the proper basis. Such assessment can not be impeached or set aside except for fraud or want of jurisdiction of the property. The courts will not interfere on the ground that the assessor erred in judgment by assessing too high or too low, if he acted honestly.

3. Where a deputy assessor views the property, and sets down, in the proper column, its fair cash value as determined by him, it can make no difference that he supposed his work was subject to review by some one else, or that his assessment would be reduced one-third in amount; and his statement to the owners that such reduction would be made, affords no valid reason for their not appearing before the board of review and seeking a reduction of the valuation.

4. A county board is powerless to change the assessments returned according to law, except upon complaint that they are too high or too low, or by way of equalization under the statute.

5. SAME—*inequality in assessment—as affecting the validity of the tax.* The law requires all taxable property to be assessed at its fair cash value, and the fact that some property may be assessed at only one-third that value will not render invalid an assessment of other property at its cash value.

6. So the omission of the assessor to assess the property of some persons liable to taxation, or the assessing of the property of some at less than its fair cash value and that of others at its cash value, while it may cause the tax-payer whose property is assessed at its cash value to bear an undue portion of the public burden, it will not affect the validity of his tax.

7. SAME—*fraud in assessment—to invalidate tax.* The fraud which will authorize the courts to interfere and declare an assessment void, is such as affects the assessment itself. The statement of the assessor, to those assessed, that his valuation will be reduced to one-third of the fair cash valuation made by him, is not such a fraud as will authorize the court to interfere, and will not excuse the tax-payer from seeking redress before the proper board of review.

APPEAL from the County Court of Washington county; the Hon. GEORGE VERNER, Judge, presiding.

This was an application to the county court of Washington county, for judgment for taxes against certain lands and lots returned delinquent by the collector of that county. Objections were filed by John L. Sargent and others, as follows:

"Comes John L. Sargent, and files objections to judgment being rendered against lots 18 and 19, block 6, Ashley; and

for special objection says, excess in assessment: lot 18 assessed at $25, lot 19 assessed at $300, when lot 18 should have been assessed at $12, and lot 19 should have been assessed at $125.

*May 17, 1886.*　　　　　　　　JOHN L. SARGENT."

Objections of M. Kerstine and twenty-six other tax-payers, as follows:

"STATE OF ILLINOIS, } ss.　In County Court, May term, 1886.
　*Washington county,*

"*In matter of application for judgment against delinquent lands and lots:*

"Now come the undersigned owners of real estate hereinafter described, limiting their appearance for that purpose, and resist application for following reasons: First, because no sufficient notice of application; second, because valuation of real estate being unjust, erroneous and excessive in the extreme, and the said owners were induced not to appear before the county board to have assessment corrected, by false and fraudulent statements of the assessor that he was assessing said property at the same figure as had been done the year prior; third, because of want of uniformity in assessment; fourth, because the amount of assessed valuation was increased by the assessor, after same was listed, without notice to owners; fifth, because, in fact, no assessed valuation was ever made or fixed by the local assessor."

Then follows a description of property owned by objectors, with the assessments of 1884 and 1885. The objections are signed by the land owners, per Forman & Watts, attorneys.

Upon hearing, the court, against the collector, permitted the objectors to introduce evidence as follows:

D. C. Rose, being duly sworn, stated that he was deputy assessor in the year 1885 for the south half of township 2 south, range 1 west, in Washington county, Illinois, in which territory the lands of said objectors are situated; that he fixed the values of lands at their fair cash value, as understood by him; that he did not understand he was making any assess-

ment at all; that he thought the county board or assessor would make the assessment from his figures, and that he told parties assessed that their assessment would be about as the year before,—which would be one-third of his figures. On cross-examination, said Rose stated that he placed his figures in a book furnished him by the county assessor, in the column headed "fair cash value;" that he supposed the county board or county assessor would reduce these figures to one-half or one-third, or whatever proportion would be necessary to raise the requisite amount of taxes; that whenever asked about the matter by land owners, he told them his figures were the fair cash value, and that the county board or county assessor would reduce them to one-half or one-third, or whatever proportion might be necessary to raise the requisite amount of taxes; that as a matter of fact he made no false or fraudulent representations, unless these statements, honestly made, amount to fraudulent representations.

Hugh P. Green, on oath, stated that he was assessor of Washington county, Illinois; that D. C. Rose was one of his deputies, and as such deputy assessed the property of objectors, together with other property; that all his deputies received their books and instructions, in a body, at the same time, and were instructed to assess real estate at about one-third its fair cash value, and to put it in the column marked "fair cash value;" that Rose was present with the others, and heard these instructions; that real estate assessed by other deputies was assessed at about one-third its fair cash value.

J. P. M. Harrison, on oath, stated that the mill property was valued, in his presence as one of the owners, at $15,000, and that Rose told him the final assessment would be $5000, and that the assessment of property would be one-third of his figures.

Other witnesses were offered, but it was admitted that they would swear substantially the same as Harrison as to the manner of assessing.

The judgment of the court is in the usual form, except as to lands and lots of objectors, and, after describing such lots and lands, is as follows: "On all the above lots, parts of lots, tracts or parts of tracts, or parcels of real estate, judgment is rendered for one-third of the amount for which judgment is applied, and judgment is refused as to the other two-thirds, and the sheriff and *ex officio* collector to be credited with the other two-thirds."

From the judgment so rendered as to the tracts and lots of objectors, the collector prosecutes this appeal.

Mr. CHARLES T. MOORE, State's Attorney, for the appellant:

The court erred in allowing the introduction of parol evidence to impeach the assessment. *Spencer* v. *People,* 68 Ill. 510.

The objectors had a complete remedy before the county board sitting as a board of equalization, and failing to pursue it, can not be heard to object on the application for judgment. The statements of the deputy assessor show no fraud in the assessments made by him. He assessed as the law required, at the fair cash value of the property, and there is no fraud in so doing. His duty did not depend on what others may have done.

The courts have no power to revise or set aside an assessment. *Spencer* v. *People,* 68 Ill. 510; *Porter* v. *Railroad Co.* 76 id. 561.

The tax-payer must take notice of his opportunity to have his assessment corrected. *Humphreys* v. *Nelson,* 115 Ill. 46.

Messrs. FORMAN & WATTS, for the objectors:

The authorities cited by appellant are cases where there was no fraud, either in fact or in law, and the parties carelessly, and without excuse, failed to appear before the board.

The evidence in this case establishes the fact that the owners of the property did not appear before the board, on account

of the assurance of the assessor that the valuations were the same as previous years.

The evidence of Harrison and the assessor as to the mill is, that Harrison was informed that the assessed valuation of the mill was $5000.   It is, in fact, $15,000.   It is admitted that other property holders were so informed as to their property. Relying on these statements, and believing them to be true, there was no need of their appearing before the board.

Will it be wise to hold that the people dare not rely on statements of the assessor as to valuations made by him, when such statements are made in the performance of his duty as an officer?

In addition to this, the assessor, who is said to have fixed the value, swears that he did not place any assessed value upon the property at all.   If he did not, was there any legal valuation of this property?   Such conduct of the deputy assessor is a fraud in fact, and for that reason the judgment of the county court was right and proper.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The questions presented by this record, involving the correctness of the judgment for taxes against the lots and tracts of land therein mentioned arise upon the assessment of such lots and tracts.   All other requirements of the statute, precedent to the right of the People for judgment for taxes levied, seem to have been strictly conformed to. ˙The taxes were levied for purposes authorized by law, and within the limit prescribed.

The county court, upon the application for judgment, heard evidence in respect of the assessment, and rendered judgment against the several tracts involved in this appeal, for one-third of the taxes extended against the same, severally, upon the assessment as returned by the assessor, and refused judgment as to the residue.   The constitution provides, that "the General Assembly shall provide such revenue as may be needed,

by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to his, her or its property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise."

The legislature, in counties under township organization, and those not under township organization, has designated and directed the persons who shall determine the value of property for the purposes of taxation, and prescribed the method, not only for the ascertainment and certification of such values, but also for the correction of any errors that may have been made in the assessment. (Revenue act, secs. 76, 84, 90, 97; Starr & Curtis' Stat. 2052, *et seq.*) The second clause of section 97 provides that the county board, at its July meeting, shall, "on the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, * * * review the assessment, and correct the same, as shall appear just." In counties under township organization, provision is also made for review of the assessment by the township board, prior to the July meeting of the board of supervisors. The assessor, alone, is the person or officer who can, in the first instance, determine the value of property for the purposes of taxation; and no appeal to or right of review by any tribunal, other than the boards mentioned, is given by law. It has been so repeatedly held by this court, under this and similar statutes, that the courts are powerless to revise an assessment, or change or set aside a valuation of property made by an assessor, or by the boards authorized by law to review the same, when the assessment has been honestly made upon property subject to taxation, and upon the proper basis, that a re-statement of the reasons for such holding would seem unnecessary. See *Spencer* v. *The People*, 68 Ill. 510; *Lyle* v. *Jacques*, 101 id. 644; *English* v. *The People*, 96 id. 566; *Adsit* v. *Lieb*, 76 id. 198; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* id. 561; *Re-*

*public Life Ins. Co.* v. *Pollak,* 75 id. 292 ; *The People* v. *Big Muddy Iron Co.* 89 id. 116 ; *Felsenthal* v. *Johnson,* 104 id. 21 ; *Humphreys et al.* v. *Nelson,* 115 id. 45.

Here, the property was subject to taxation, the tax legal, and the assessment, as returned by the assessor, apparently made in conformity to the mode prescribed by the statute, and by the proper officers. The assessment was returned within the time required, verified by the oath of the assessor, as required by the 90th section of the act, showing, among other things, that the values designated therein were the fair cash values of the lots and tracts of land severally assessed by him. The determination of value by the assessor, when exercised in conformity to the statute, is judicial in its character; and so long as he keeps within the rules prescribed by law for his guidance and conduct, his acts, except in the manner provided by the statute, are not the subject of review, nor can they be impeached or set aside except for fraud or want of jurisdiction of the property assessed. *(Ottawa Glass Co.* v. *McCaleb,* 81 Ill. 556.) So it has been held, where the assessor has acted honestly, but erred in judgment by assessing too high or too low, the court will not interfere or disturb the assessment. *(City of Chicago* v. *Burtice,* 24 Ill. 489 ; *Elliott* v. *City of Chicago,* 48 id. 294.) And that therefore evidence tending to show ex-excessive valuation was properly excluded. *Spencer et al.* v. *The People, supra,* and authorities cited.

But two points are urged against the validity of the assessment of the lots and tracts here involved, all other objections being wholly unsupported by the evidence introduced, and abandoned by counsel in argument in this court. It is said, first, that no assessment of these lots was in fact made; and second, that the assessment of the same was excessive, and that by the false statement of the assessor at the time of the assessment, objectors were prevented from applying to the county board for redress. It is manifest, if no assessment was in fact made by the assessor, the court should have sus-

tained the objection to the whole tax.   If the assessment and return could be contradicted by parol, the evidence fails to sustain the contention of counsel.

By the statute, (sec. 76,) the assessor, between the first day of May and the first day of July, is required to actually view and determine, as nearly as practicable, the fair cash value of each tract or lot of land listed for taxation, and set down in the proper column, in the book furnished him, the value of each tract or lot, etc., and by section 90 is required to return his assessment on or before the first day of July, verified by his affidavit, etc.   The evidence shows that the deputy assessor actually viewed the premises, and did determine the actual cash value of the lots and tracts of land of objectors, severally, and set down, in his book, opposite each tract, under the appropriate heading, such fair cash value as determined by him, and that the same was returned as the assessment of such tracts and lots.   It can make no possible difference that the deputy supposed that his work was subject to review by some one else, or that his assessment would be reduced.   His valuation was upon the basis fixed by law for determining the valuation of property for taxation, and no other basis could have been adopted that would have been a compliance with the law.

It is shown that the valuation of the lots made by the assessor was made and entered in the presence of the objectors, and they knew he made the same upon the basis of their fair cash value.   No objection seems to have been made then, nor is it urged now, that there was any over-valuation upon that basis. Objectors are presumed to have known that the assessor was required by law to assess their property at its fair cash value, and return, under oath, that he had done so, and that there was no authority of law for reducing the valuation below such value.   It is true the evidence shows that the county assessor instructed his deputies to assess at one-third of the fair cash value, all property, and that some of the property of the county, —to what extent does not appear,—was so assessed; but that

20—122 ILL.

can form no basis for resistance to the payment of taxes by
objectors, for the reason, as we have seen, if the property of
others was assessed too low, they might have appeared before
the county board, and upon complaint, and the inequality ap-
pearing, the board would have reviewed the assessment and
have corrected the same, as should appear just. The omission
to assess others liable to taxation, or to assess portions of their
property, or the assessment of the property of others at less
than its fair cash value, while it may cause the tax-payer whose
property is assessed at its fair cash value, to bear an undue
portion of the public burden, will not affect the validity of the
tax. *Dunham* v. *City of Chicago,* 55 Ill. 357; *Spencer et al.*
v. *The People, supra.*

It is not shown or contended that the deputy assessor was
guilty of any fraud in making the assessment complained of.
On the contrary, it is shown that he acted honestly, and in
good faith determined the fair cash value of the property of
objectors, and entered it in the assessor's book accordingly;
but it is urged that objectors were misled into supposing that
some one else would reduce their assessment. It is shown
that the deputy stated to Mr. Harrison, that property he esti-
mated at $15,000 as its fair cash value, and so put down by
him, would be reduced to $5000; and to others, that the county
board would reduce his valuation to one-third thereof, or to
whatever would be sufficient to raise the requisite amount of
taxes, etc. And it is said, but for these statements objectors
could have applied to the county board, and would have done so,
and had their assessments reduced. There are several mani-
fest answers to the position that such representations would
affect the validity of the assessment. The objectors are pre-
sumed to know the law, and that the assessor was required by
law to assess their property at its fair cash value, and return
his assessment, under oath, that it was so assessed, and that the
county board were not authorized to determine the amount of
taxes required, except for county purposes, and were powerless

to reduce the assessment upon that basis or any other, except upon complaint that an assessment was too high or too low, or by way of equalization of the whole assessment of the county. But the fraud contemplated, and which will authorize courts to interfere and declare an assessment void, is such as affects the assessment itself. If, however, such representations were fraudulently made, they were not in respect of the assessment as then made by the deputy, and if prejudicial to objectors, are so only in that they prevented their taking other steps to reduce the assessment. The only duty of the assessor was to view, assess and return an assessment of property at its fair cash value. Except when sitting as a member of the board of town review, he is not authorized to reduce assessments; and any statements he might make at the time of making an assessment, could have no greater force than if made by a stranger, and objectors having had notice of the assessment, were not relieved by his declarations from petitioning the county board, if entitled to have their assessment reduced.

But the complete answer to the contention is, that there is no pretence that injustice has been done objectors. While the statute remains as it is, assessments are rightly and justly made upon the basis of the fair cash value of the property assessed.

We think that the evidence was improperly admitted, and that the county court erred in not rendering judgment for the full amount of the tax extended against the land of objectors.

The judgment of the county court is therefore reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*