## Richard C. Gunning et al. v. The People ex rel. Butterick Publishing Co.

1. Appeals—*In Cases Relating to the Revenue.*—Appeals in all cases relating to the revenue, or in which the State is interested as a party or otherwise, must be taken directly to the Supreme Court.

2. Revenue—*The Term Defined.*—The word "revenue," as used in the revenue act, is to be construed to embrace public revenue, whether State or municipal, all taxes and assessments imposed by public authority, and to special assessments for almost every municipal purpose, as well as to general taxes.

3. Same—*Right of a Taxpayer Before the Board of Review.*—The right of a taxpayer to a hearing before a town board of review, when assembled, is clearly secured by the present statute. It is a substantial right and should not be taken away by implication.

Revenue Matters.—Appeal from the Superior Court of Cook County; the Hon. John Barton Payne, Judge, presiding. Heard in the Branch

Appellate Court of the First District at the March term, 1898.    Appeal
dismissed.    Opinion filed May 31, 1898.

Edward H. Morris, attorney for appellants.

Edgar Bronson Tolman and Harvey Mitchell Harper,
attorneys for appellee.

Mr. Presiding Justice Shepard delivered the opinion of
the court.

We are met at the outset with a motion, continued from
the last term, to dismiss this appeal, for the reason that it
is a case relating to the revenue within the meaning of sec-
tion 88 of the Practice Act, and that therefore this court is
without jurisdiction to consider the case upon its merits.

In order that the scope and object of the proceeding may
be seen, and therefrom a correct judgment be formed as to
whether this is a case relating to the revenue within the
meaning of the act referred to, we will adopt the following
statement of facts :

The relator, a New York corporation, doing business in
the cities of New York and Chicago, having personal prop-
erty, on May 1, 1897, subject to taxation in the town of
South Chicago, "of the fair cash value of not to exceed
$3,000," filed in the Superior Court of Cook County, on
July 2, 1897, a petition for a writ of mandamus against,
respectively, the assessor, clerk and supervisor of said town,
commanding them and each of them to meet as the town
board of review of the said town of South Chicago, and hold
sessions from day to day, and hear and pass upon, in good
faith, all the applications and complaints which have been
or might thereafter be filed with them, and all such com-
petent evidence as might be offered by the relator and other
persons in the petition named, and by other similarly situ-
ated, etc., touching the assessment of taxes for the year 1897,
upon property in said town.

It was alleged in said petition that said assessor, on June
11, 1897, and before the fourth Monday of said month,
assessed the personal property of the relator in said town

at a sum at least four hundred per cent greater than its fair cash value; that in apt time, on June 28, 1897, the relator properly filed with and delivered to said town board of review its complaint and application in writing to have such assessment revised and corrected; and that on the same day certain named persons, firms and corporations, and many others, numbering about three hundred, "involving the assessments of property of the value of millions of dollars," filed with said town board complaints and applications, similar to the one filed by the relator.

The petition, in addition, contains numerous allegations of fraudulent actings and failures to act by said town board of review, and its final adjournment *sine die* without considering said complaints and applications, or either of them, except to dismiss the same in bulk without consideration.

The prayer of the petition was for the awarding of the writ of mandamus directed to the said assessor, clerk and supervisor, commanding them and each of them, as set forth in the abstract of the record filed in this court, as follows:

" That they meet as town board of review of the town of South Chicago, and that they hold sessions each day from day to day until they have actually in good faith heard all the applications and complaints which have been or may be hereafter filed with them, and that they receive and entertain all competent evidence and testimony which may be offered by this relator and the persons in this petition named, and all other persons similarly situated, who have or may have filed their applications or complaints with said board, and that they pass upon said applications and that they adjourn from day to day for one day only, until they shall have in good faith heard all of said objections and received all competent evidence offered in support thereof, and come to a determination in reference thereto; and that they shall continue in session until due opportunity has been given for all persons who have been heard, to know of the decision which said board has reached, and that an opportunity shall be given to file appeals from the decision of

said board to the county board of Cook county pursuant to law. And that they shall continue in session until they shall give public notice of their decision in each case, and that they shall publicly announce their decision in each case, and that the said assessor and town clerk shall make and second and vote affirmatively in favor of resolutions, formally rescinding the illegal acts above set forth, and that said assessor shall produce all books in his possession containing the assessments of any person so complaining, and. containing also assessments of other personal property of the same kind as that of the said complainants in the said town, and containing the assessments on other lands in the same neighborhood as that of the said complainants in said town, and that the said board remain in session and discharge their duties aforesaid until the further order of this court, and that such further order may be made in the premises as justice may require."

One of the members of the town board, the supervisor, answered the petition, confessing its allegations and consenting to the issuing of the writ; the others answered, taking issue upon all the material allegations of the petition, and upon a hearing a peremptory mandamus was ordered in fully as broad terms as was prayed.

Section 88 of the Practice Act provides that appeals "in all cases relating to revenue, or in which the State is interested as a party or otherwise, shall be taken directly to the Supreme Court."

It was held, in Dement v. Rokker, 126 Ill. 174, that the jurisdiction of the Supreme Court was defined by sections 88, 89 and 90 of the Practice Act, and that section 8 of the Appellate Court Act of June 6, 1887, could not constitutionally (Sec. 13, Art. 4 of the Constitution) and did not profess to repeal the sections of the practice act referred to, nor to assume to revise them, or to re-enact laws covering the same subject-matter, and that its jurisdiction was unaffected by said later act.

Later on, without apparently impinging upon the holding in the Dement case, the Supreme Court decided that

said section 8 operated as an amendment to section 88 of the Practice Act, and should be read and construed as a part thereof. Lee v. People, 140 Ill. 536.

And in Lynn v. Lynn, 160 Ill. 307, it was again held that said sections 8 and 88 must be considered and construed together. Being so considered and construed, it is as if the quoted part of said section 88 were expressly added to the limitations to the jurisdiction of the Appellate Court imposed by said section 8. There can, therefore, be no question, and none is made, but that cases directly relating to the revenue go upon appeal directly to the Supreme Court, notwithstanding that clause of section 8 of the Appellate Court Act giving jurisdiction to the Appellate Court of all matters of appeal in "any suit or proceeding at law," if considered alone, might give rise to a different conclusion.

But whether the case here presented be one "relating to the revenue, or in which the State is interested as a party or otherwise," is a matter of considerable uncertainty so far as express adjudication goes.

The appellee speaks of the question as being one of "first impression," and the appellant seems to rely upon a definition to be found in Hodge v. The People, 96 Ill. 423, of what suits may be considered as relating to the revenue within the meaning of the act, and upon other decisions of both the Supreme and Appellate Courts upholding the jurisdiction of the latter courts in cases where the revenue was only incidentally involved; and insists that it is only such a case as involves directly the collection of revenue, i. e., such as is brought for the collection of taxes, or to prevent the collection of the same that is covered by the act.

The word "revenue" as used in the act has been construed by the Supreme Court to "embrace public revenue, whether State or municipal—to embrace all taxes and assessments imposed by public authority." Webster v. The People, 98 Ill. 343.

And it has been applied to special assessments for almost

every municipal purpose—as well as to general taxes—in cases where the jurisdiction of the Supreme Court has been asserted, and that of the Appellate Courts denied.   Potwin v. Johnson, 106 Ill. 532; People v. Springer, 106 Ill. 542; Herhold v. City, 106 Ill. 547.

And from a judgment in an action upon an appeal bond, given upon appeal from an assessment of benefits upon certain land, it was held that the Supreme Court and not the Appellate had jurisdiction, upon the ground that the sum recoverable in such a suit was the amount of the assessment, and would become a part of the public funds, and in such regard it was not material whether it was collected on the assessment or on the bond.   Kilgour v. Drainage Commissioners, 111 Ill. 342.

On the contrary, numerous cases exist in which the jurisdiction of the Appellate Court has been upheld, but they seem to have been cases that related only incidentally to the revenue.   Wherever the revenue was directly involved the jurisdiction of the Supreme Court has been maintained to the exclusion of the Appellate Court.

The appellant says that "no matter what the outcome of this appeal may be, in no way does it determine whether appellee must pay taxes, or how much."

That, we think, is too narrow a statement to be applicable here.

Will the public revenue be diminished or increased, or is it liable to be, as a result of the proceedings; not, will it be applied in a particular manner, as was the case in Supervisors v. The People, 159 Ill. 242, nor where, as in Hodge v. The People, 96 Ill. 423, the revenue might be incidentally increased by a recovery from the sheriff of fees collected and retained by him in excess of his proper salary.   The assessments involved in the case at bar are an imposition by the lawfully constituted public authorities upon or against the tax-paying public composed of many individuals.

The scope of the petition was to obtain a review by the town board of the assessments made by the assessor upon property of the alleged value of millions of dollars; and the

judgment awarding the peremptory writ directed the three officials, composing the town board, to assemble as a town board of review, and consider and hear evidence in support of the complaints filed and decide upon the same, and if the complaints proved to be well founded, to revise and correct the assessments.

We have, in this connection, no concern with the particular result of the proceeding, but only with whether the tendency of the proceeding was to directly affect the public revenue.

For present purposes it was immaterial whether the assessment should stand or become increased or diminished. It is enough that the proceeding was an attack upon the assessment as made by the assessor, and tended directly to affect its validity.

It was held in Hough v. Hastings, 18 Ill. 312, that the statute requiring the meeting of the town officers as a board of review was imperative—as much so as that the property should be originally assessed by the assessor; and that a right to a hearing before such board was granted by the law to every tax payer, and if deprived of the right, he could not be bound by the assessment.

That decision was made under a statute different in words from the present one, but not variant in meaning, and although in that case the board did not meet at all, and in this case it did meet, the right to a hearing before it in this case was in every substantial sense denied.

Since that decision was made, the legislature has enacted (Sec. 88, Revenue Act) that a failure of the town board of review to meet, shall not vitiate the assessment made by the assessor, "except as to the excess of valuation or tax thereon, shown to be unjustly made or levied," but we know of no legislation which deprives the decision of its effect, as being the law, in cases where, as here, the town board did meet but peremptorily dismissed the complaints without permitting a hearing by a tax payer. The right of a tax payer to a hearing before a town board of review, when assembled, is as clearly secured by the present statute as by

the old one, and is as substantial a right now as it ever was, and should not be taken away by implication.

But even though it should be held that subsequent legislation had done away with the whole law of Hough v. Hastings, *supra*, there remains the exception, reserved by such legislation, " as to the excessive valuation or tax thereon · * * * unjustly made or levied," and to that extent, at least, the public revenue seems to be clearly involved in this proceeding, within the meaning of section 88 of the Practice Act.

Our conclusion is, that this court is without jurisdiction, and therefore the appeal will be dismissed.