### B. LOEWENTHAL

*v.*

THE PEOPLE *ex rel.* Raymond, County Collector.

*Opinion filed October 24, 1901.*

1. TAXES—*courts have no power to revise assessments for errors of judgment.* Courts have no power to revise assessments made by the board of assessors and approved or revised by the board of review, upon the ground that those bodies fell into an error of judgment in estimating the value of the property.

2. SAME—*party must bring mandamus to preserve his right to a hearing of his complaint of over-valuation.* On application for judgment of sale the county court cannot entertain an objection that the property was assessed too high, even though it is stipulated that the board of review had promised to act upon the tax-payer's complaint of over-valuation, and that his first notice to the contrary was that the board had delivered the books to the county clerk, since, under the proviso to section 38 of the Revenue act of 1898,

(Laws of 1898, p. 49,) the tax-payer could have brought *mandamus* to compel the board to act upon his complaint, even though the books were turned over. (CARTWRIGHT and HAND, JJ., dissenting.)

3. MANDAMUS—*virtual refusal to perform duty is sufficient basis for mandamus.* Any evasion of a positive duty by an officer or a legal tribunal, amounting to a virtual refusal to perform such duty, is all that is needed to maintain a writ of *mandamus.*

4. SAME—*mandamus will lie to compel tribunal to re-convene and perform an omitted duty.* An inferior tribunal which has omitted, and by evasion refused, to perform an official duty while convened, cannot, by adjourning its meeting *sine die,* place itself beyond the power of the courts to compel by *mandamus* the performance of a duty enjoined by law.

MAGRUDER, J., does not concur.

APPEAL from the County Court of Cook county; the Hon. M. W. THOMPSON, Judge, presiding.

STEIN & PLATT, for appellant:

Where the levy of a tax involves a determination of values the tax-payer has a right to a hearing, and the enforcement of the tax without an opportunity for a hearing is a taking of property without due process of law. *Railway Tax cases,* 13 Fed. Rep. 722; *Nixon* v. *Ruple,* 30 N. J. L. 59; *Remsen* v. *Wheeler,* 105 N. Y. 573; *In re Union College,* 129 id. 308; *Edes* v. *Boardman,* 58 N. H. 580.

A statute cannot authorize the officers entrusted with its execution to disregard provisions essential to its constitutionality. *Plumer* v. *Supervisors,* 46 Wis. 153.

*Mandamus* will not lie unless the officer sought to be controlled has refused to perform his duty and unless such a performance is possible at the time the writ is sought. High on Ex. Legal Rem. secs. 12-14; Spelling, secs. 1377-1381; *Spiritual Society* v. *Selectmen,* 58 Vt. 192; *People* v. *Darling,* 96 Ill. 503; *Swigert* v. *Hamilton County,* 130 id. 538; *State* v. *Perrine,* 5 Vroom, 254; *People* v. *Klokke,* 92 Ill. 134; *People* v. *Lieb,* 85 id. 484; *People* v. *Mount Morris,* 137 id. 576.

The provisions of a revenue law requiring an opportunity for a tax-payer to be heard are for the benefit of

the tax-payer, and compliance with them is essential to
the validity of the tax.    *Darling* v. *Gunn,* 50 Ill. 424.

Strict compliance with all provisions of a revenue
law intended· for the protection of a property owner is
essential to the validity of the tax.    *Marsh* v. *Chestnut,* 14
Ill. 223; *Howe* v. *People,* 86 id. 288.

JULIUS A. JOHNSON, County Attorney, and FRANK L.
SHEPARD, Assistant County Attorney, for appellee:

The valuation and assessment of appellant's property
for purposes of taxation is by the constitution and stat-
utes of this State vested exclusively in the board of as-
sessors in the first instance, and, upon review, in the board
of review, and the county court was without jurisdiction
to set aside the assessment as made and confirmed and
re-assess appellant's property, and that court properly
overruled the objections and rendered judgment for the
tax.    *Spencer* v. *People,* 68 Ill. 510; *Swinney* v. *Beard,* 71 id.
27; *Insurance Co.* v. *Pollak,* 75 id. 292; *Porter* v. *Railroad Co.*
76 id. 561; *Adsit* v. *Lieb,* id. 198; *People* v. *Iron Co.* 89 id. 116;
*Railway Co.* v. *People,* 119 id. 182; *Phœnix Stock Exchange* v.
*Gleason,* 121 id. 524; *Railroad and Coal Co.* v. *Stookey,* 122 id.
358; *Sterling Gas Co.* v. *Higby,* 134 id. 557; *People* v. *Lots in
Ashley,* 122 id. 297.

Appellant's remedy was before the board of review.
It was the duty of that tribunal to review the assess-
ments and hear and determine complaints of over-valua-
tion.    If appellant failed to secure a hearing before the
board of review upon his complaint of over-valuation,
as now argued, he should have availed himself of the
ample and adequate remedy of the writ of *mandamus* to
secure action on the part of the board of review, in order
that his complaint, if any he justly had, should be heard
and determined.    *Beidler* v. *Kochersperger,* 171 Ill. 563; *Kin-
ley Manf. Co.* v. *Kochersperger,* 174 id. 379; *Kochersperger* v.
*Larned,* 172 id. 86; *New Haven Clock Co.* v. *Kochersperger,* 175
id. 383; *Felsenthal* v. *Johnson,* 104 id. 21; Cooley on Taxa-

tion, 521; *Gibbs* v. *County Commissioners*, 19 Pick. 298; *Bank* v. *Utica*, 4 Paige's Ch. 399; High on Ex. Legal Rem. secs. 139, 140, p. 117.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was an application by the appellee county collector of Cook county, to the county court of said county, for a judgment and order of sale against lands and lots delinquent for the taxes levied thereon for the year 1899. The delinquent list contained four lots in the city of Chicago of which the appellant was the owner. The appellant appeared and filed objections to the rendition of judgment against each and all of the said lots. The objections were heard upon a stipulation setting forth the testimony of the witnesses, and also certain facts; were overruled, and an order and judgment for the sale of the lots granted as prayed by the collector. This is an appeal to reverse the judgment and order of sale.

It appeared from the stipulation the appellant was the owner of the lots on the first day of April, 1899; that their total fair cash value did not then exceed the sum of $153,000; that the valuation of the lots as returned by the board of assessors to the board of review was $206,575; that George C. Fry, a duly authorized agent of the appellant, "at various times called at the office of the assessors for the purpose of ascertaining the value at which said property had been assessed; that as soon as he was able to learn from said board of assessors the valuation fixed by said board of assessors, said Fry called at the office of the board of review and filed a complaint, in writing, objecting to the amount at which said property had been assessed; that said complaint was filed during the latter part of August, 1899, and not on or before the first Monday in August, but that said complaint was filed as soon as said Fry, representing the owner of said property, and as soon as B. Loewenthal, the owner of said property, could learn the amount

192—15

at which said property had been assessed, and that the reason the said written complaint was not filed with the board of review on or before the first Monday in August, was because it was impossible, on or before the first day of August, to learn the value at which said property had been assessed; that when he went to the office of said board of review to make said complaint he was unable to see any member of the board of review in person, but was referred to a clerk standing at a desk in the front part of the office; that when he handed the complaint to said clerk, said clerk informed said Fry that the said objection would be called up before the board of review in its due course and would be considered by the board of review, and that he, Fry, as agent of said objector, would receive due notice by mail when such objection would be taken up for hearing by said board of review; that he did not, nor did the said B. Loewenthal, nor any person acting on his behalf, receive any notice of any hearing of said objection before said board of review, but that said Fry on several subsequent occasions called at the office of said board of review and inquired of the clerks placed in charge of said office by said board of review as to when said objection would come up for hearing, and was each time informed that said objection had not yet been reached in its order but it would be taken up in due course, and that prior to said hearing said Fry and the said objector would receive notice in writing of the time of said hearing; that the said Fry and the said B. Loewenthal depended upon the statements made by said clerk in the office of the board of review and expected such notice of a hearing upon said objections, but that no such notice was ever received by said Fry or by said Loewenthal, and while said Fry and said Loewenthal were still waiting in expectation of receiving notice of such hearing, the tax books were closed and delivered by the board of review to the county clerk; that no hearing was ever given by said board of review upon the ob-

jections filed against the assessment on said property, so far as is known to the said Loewenthal or said Fry, or any person for said Loewenthal or said Fry."

The statute secures to every person whose property is assessed for taxes the right to a hearing before the board of review on a complaint in writing that the property has been assessed too high. The board are required to review the assessment upon such complaint and correct the same as shall appear to be just. This provision is of vital importance to the tax-payer, and it is against every principle of right and justice that he should be deprived of all opportunity to contest the fairness of the assessment. The constitution authorized the General Assembly to provide such revenue as shall be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property, and the provisions of the statute are designed to accomplish that purpose. The requirement of the statute for a hearing of the complaint is mandatory, and no person ought to be required to pay a tax without a compliance with the law which entitles him to such hearing.

Section 1 of article 9 of the constitution of 1870, except so much thereof as relates to the imposition of taxes upon certain specified occupations, is as follows: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such valuation to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise."

In obedience to this constitutional requirement that the value of property assessable for taxation shall be ascertained by some person or persons elected or appointed in such manner as the General Assembly shall elect for that purpose, and not by other persons or other

manner, the General Assembly, by an act entitled "An act for the assessment of property," etc., approved February 25, 1898, (Hurd's Stat. 1899, p. 1444,) provided that the value of real property situate in Cook county, as is the property in question, should be ascertained by a board of assessors, consisting of five persons, to be elected in the manner as prescribed in section 3 of the act. The act further provided the board of assessors shall have authority to designate and appoint deputy assessors to perform such duties connected with the assessment of property as may be assigned to them. Section 32 of the act authorizes the selection of three persons, by election, to constitute a board of review, and section 35 empowers the persons composing such board of review, among other duties, on complaint that any property has been assessed too high by the board of assessors, to ascertain the true assessable value of such property and approve or correct the assessment of such property as made by the board of assessors.

Under the said provision of the constitution hereinbefore referred to, and of the said act of February 25, 1898, made in pursuance thereof, the valuation of property for the purposes of taxation in said city of Chicago and county of Cook is committed to the persons composing said board of assessors, in the first instance, and the persons composing the board of review, when sitting in review of the action of said board of assessors. The power does not reside in the courts to revise the assessments made by these bodies, on the ground, alone, they fell into an error of judgment in estimating the value of the property. This principle was declared in *People ex rel.* v. *Lots in Ashley,* 122 Ill. 297, and many decisions of this court declaring or illustrating it are there collected. In later cases, notably *Keokuk Bridge Co.* v. *People,* 145 Ill. 596, *Spring Valley Coal Co.* v. *People,* 157 id. 543, *Clement* v. *People,* 177 id. 144, and *Keokuk Bridge Co.* v. *People,* 161 id. 514, the doctrine has been re-affirmed. In *Clement* v. *Peo-*

*ple, supra,* we said: "We have repeatedly held that the courts have no power to revise an assessment merely because of a difference of opinion as to the reasonableness of the valuation placed upon the property. On an application for judgment against lands for delinquent taxes it may be objected that the tax is not authorized by law, or is assessed upon property not subject to taxation, or that the property has been fraudulently assessed at too high a rate."

The contention, here, on the part of the appellant is, the county court of Cook county became vested with authority and jurisdiction to ascertain the true valuation of his property for the purposes of taxation, for the reason that the board of review had failed or refused to review the assessment of his property made by the board of assessors, as required of them by the provisions of the second paragraph of section 35 of the said act of February 25, 1898, though he had complained, in writing, to said board of review that the estimate of the value of his said property made by the board of assessors was too high.

Conceding that the board of review refused to perform a plain duty imposed upon it by law, to ascertain the fair cash value of his lots and review and correct the estimate of such value made by the board of assessors, could the appellant lawfully take no further steps to procure an estimate to be made by the tribunal empowered to perform such duty, refuse to pay the taxes levied on the estimated values as made by the board of assessors and standing approved by the non-action of the board of review, and demand that the county court, when asked to enter judgment against his lots as delinquent for such taxes, should take upon itself the duty of estimating the true fair cash value of his property? We think not. His duty was to employ the ample remedy provided by the law to compel the board of review to discharge the duties imposed upon them by law, and ascertain the true fair cash value of his property and revise the action of the

board of assessors accordingly. The board of review, and not the courts, are invested with the power to estimate the value of assessable property, and he should have sought the aid. of the courts, not to estimate the value of his property, but to command the board of review to perform that duty.

In the case of *Beidler* v. *Kochersperger*, 171 Ill. 563, which was an appeal from the decree of the circuit court dismissing, for want of equity, a bill in chancery which sought to enjoin the collection of a tax, because, as alleged, the property had been over-assessed, and that appellant filed his complaint with the board of supervisors sitting as a board of review, and while said complaint was pending before a committee of that board to whom it had been referred the board adopted a general resolution confirming the assessment returned by the assessors, without notice to appellant or an opportunity to be heard before the board and without considering his complaint, and thus disposed of and completed its work as a board of review, we said (p. 566): "The statute imposed upon the board of supervisors, as an absolute duty, to entertain, consider and determine the application of appellant for relief with respect of the alleged over-valuation of his property. Courts of law possessed ample power to enforce the performance of this duty by the board. Appellant could have applied to such courts for a writ of *mandamus* to compel the board to perform the duty so charged upon it by the statute,—that is, to hear, consider and decide as to the alleged grievance. * * * It is the policy of our law the whole matter of the valuation of property for taxation shall be committed to the control of the assessor, the board of review and the board of supervisors of the respective counties. (*People ex. rel.* v. *Lots in Ashley*, 122 Ill. 297.) It was therefore incumbent upon the appellant to have availed himself of the ample and adequate remedy of the writ of *mandamus* to secure action on the part of the board of supervisors, in order

that his grievances, if any he justly had, should be heard and determined. The law gave him his day in court. Neither fraud, accident nor mistake of fact intervened to prevent or excuse him from availing himself of his legal right. He did not seek his legal remedy, and whether he misconceived the law or was simply negligent, it is well settled he cannot invoke the aid of a court of chancery to relieve him." In *Kochersperger* v. *Larned*, 172 Ill. 86, and *Kinley Manf. Co.* v. *Kochersperger*, 174 id. 379, the same doctrine was announced and applied as in the *Beidler case.*

Appellant urges that it appears from the stipulated facts that the board of review did not refuse to grant him a hearing; on the contrary, they constantly expressed a willingness and intention to do so, and that the first intimation he had that he would not be afforded a hearing by the board of review was, that said board had delivered the books containing the assessment of real property to the county clerk. He contends, therefore, that he could not have maintained *mandamus* in anticipation of a supposed evasion or omission of duty on the part of the board; that *mandamus* will not lie to compel an officer to do an act which he expresses a willingness to do, and that the board were without power to make any changes or revision of the assessments after they had transferred the books of assessment to the county clerk; that therefore *mandamus* would not lie, either while the books were in the hands of the board of review or after such books had been transferred to the county clerk.

Any evasion of a positive duty by an officer or a legal tribunal, amounting to a virtual refusal to perform the duty, is all that is needed to maintain a writ of *mandamus*. (*Illinois State Board of Dental Examiners* v. *People*, 123 Ill. 227.) Conduct from which a refusal can be conclusively implied is equivalent to a positive refusal. (*People ex rel.* v. *Town of Mt. Morris*, 137 Ill. 576; 14 Am. & Eng. Ency. of Law,—1st ed.—107.) The evasions of duty shown by the stipulation and the transfer of the books of assessment

to the county clerk constituted a refusal to act by conclusive implication, and the appellant could have applied for a writ of *mandamus* at once upon being advised that the board of review had delivered the books of assessment to the county clerk without acting on his complaint.

Counsel for appellant are in error in the view that *mandamus* would be unavailing after the board of review had delivered the books of assessment to the county clerk. Section 38 of the act of 1898 (Hurd's Stat. 1899, p. 1453,) provides that the board of review in the county of Cook shall, on or before the 7th day of September, annually, complete its work and make the necessary entries in the assessment books to make the assessments conform to the changes made therein by said board, and shall attach to said books of assessment an affidavit, after a form prescribed in the section; and section 43 of the same act requires the board of review to deliver the assessment books, when so completed, to the county clerk. But a proviso added to said section 38 of said act provides "that in counties containing 125,000 or more inhabitants the board of review shall also meet from time to time and whenever necessary to consider and act upon complaints and to further revise the assessment of real property as may be just and necessary."

Without assuming to declare that this proviso has further or other effect, it is clear, under the provisions thereof, the courts, by means of a writ of *mandamus,* could compel the board of review to convene after the said 7th day of September for the purpose of performing a duty which rested upon them when the books were declared to be completed, as did, in this instance, the duty to consider and act upon the complaint of the appellant. An inferior tribunal which has omitted, and by evasion refused, to perform an official duty while officially convened, cannot, by adjourning its meeting *sine die,* place itself beyond the coercive power of the courts to compel the performance of a duty enjoined by law. It may be

required to re-convene and perform its legal functions. If, as was remarked in *People* v. *Board of Supervisors*, 185 Ill. 288, it is the general rule *mandamus* will not be granted in anticipation of a default or failure of official duty, it must be that the writ can be availed of after the omission or failure has occurred, otherwise the observance or, non-observance of the statutory duty would become a matter wholly resting in the uncontrollable discretion of the public officer or official tribunal charged with the duty. The appellant should have availed himself of this writ, and thereby obtained the revision of the estimate of the value of his property as made by the board of assessors. The county court correctly overruled his objections to the application for judgment against his lots.

The judgment appealed from is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER: I do not concur in this decision.

Mr. JUSTICE CARTWRIGHT, dissenting:

Upon application for judgment and an order for sale of lands for taxes the county court has no power to revise the assessment and re-value the premises on the ground that the valuation is too high, but it is within the power and duty of the court to determine as to the validity of the assessment made and deny the application if the tax is illegal. The single question in this case is whether the court ought to have rendered judgment for taxes based upon an assessment beyond the true value of the property, where the owner, without fault or negligence on his part, was deprived of a hearing before the board of review.

The sole ground upon which it is claimed that the court was justified in enforcing the tax by a sale of the lands is, that the tax-payer might by a suit in *mandamus* have compelled the taxing authorities to observe the requirements of the law. With that conclusion I cannot

agree.   I understand all the authorities as holding that
a tax is illegal if the tax-payer has been denied his law-
ful right to a hearing before a board of review.   Judge
Cooley, in his work on Taxation, (2d. ed. p. 365,) says:
"Whatever statutory provisions are made for notice and
hearing must be regarded, under the rules of construction
already given, as mandatory.   A compliance with them
in all essential particulars should therefore be held a
condition precedent to any further proceedings."   Speak-
ing of the question whether the right to be heard is a
constitutional right, and indefeasible, he says (p. 363):
"Upon this subject there is a general concurrence of au-
thorities in the affirmative.   It is a fundamental rule that
in judicial or *quasi* judicial proceedings affecting the
rights of the citizen he shall have notice and an oppor-
tunity to be heard before any judgment, decree, order or
demand shall be given or established against him."

In Black on Tax Titles it is said (2d ed. sec. 130):
"The proceeding for the assessment of taxes, though not
strictly judicial, is *quasi* judicial in its character; and
hence, in accordance with well settled principles, it is
essential to its validity that the law authorizing it should
provide some kind of notice, and an opportunity to be
heard respecting it, before the proceeding becomes final,
or it will want the essential element of due process of
law.   If, therefore, the law provides a board of equali-
zation having power to alter the assessments of the prop-
erty of individuals, it is necessary that the tax-payer
should have adequate notice of any application or pro-
posal or intention to change the amount of his assess-
ment, or of the time and place where he himself may
complain of an erroneous assessment, and be accorded
an opportunity to be heard; failing this, the action taken
by the board is null."

The same rule is stated in Desty on Taxation, (vol. 1,
p. 597,) as follows:  "It is a fundamental principle that
before a person can be deprived of a right, even by ju-

dicial suit, he must have notice and reasonable opportunity to be heard in defense of his rights. A tribunal invested by law with power to affect the property of a subject is bound to give such subject an opportunity of being heard before it proceeds. The rule is of universal application, and is founded on the plainest principles of justice. The power to tax is plenary, but taxation implies public interest, and also that the proceedings are *in pais*, in some of which the tax-payers have a right to a hearing; and any attempt to levy the burden in disregard of those principles must be inoperative. No person can be deprived of his property without a hearing; and this constitutional provision may apply to the assessment of taxes for the support of the government. If a party is illegally deprived of opportunity for a hearing in opposition to the assessment, the defect is jurisdictional and cannot be cured. * * * And where the statute requires it, the failure to give notice and opportunity to be heard in any appellate tribunal, after assessment, is fatal to the validity of the tax."

The assessment lies at the foundation of every tax, and is the basis for the distribution of public burdens. No tax can be legal or enforceable which does not rest upon a valid and legal assessment. No authority has been cited or found which differs from the foregoing, and this court has heretofore adopted and followed the same rules, and held that the observance of all the material requirements of the statute which are designed for the security of the tax-payer are conditions precedent to any lawful demand whatever upon him. *Cleghorn* v. *Postelwaite*, 43 Ill. 428; *Darling* v. *Gunn*, 50 id. 424; *Howe* v. *People*, 86 id. 288.

*Hough* v. *Hastings*, 18 Ill. 312, was an action of ejectment by Hough, based on a tax deed executed in pursuance of a judgment and sale. The defendant, Hastings, offered evidence tending to show that there was no meeting of the town board of review for the hearing of com-

plaints. There was judgment for the defendant, which this court affirmed, saying (p. 317): "The statute prescribing such meeting is not merely directory, but is imperative,—as much so as that the property should be originally assessed by the assessor. It was a tribunal established by law, to which the owner of property might appeal from the assessment made by the assessor, with authority to reduce the assessment. A right to a hearing before these revisers was granted by the law to every tax-payer, and if deprived of this right he could not be bound by the assessment. The right of the owner of the land to raise objections of this character upon the trial of the tax title has been repeatedly settled by the decisions of this court and will not be re-considered now."

*City of Nashville* v. *Weiser*, 54 Ill. 245, was an application for judgment against lands for taxes levied by the city for school and other purposes. The charter required the city council to fix a time for hearing objections to the assessment and to give notice of time and place. The council fixed the time but failed to attend. This court affirmed the judgment refusing the application, saying (p. 249): "It was important to the tax-payers to have an opportunity afforded them to appear and be heard before the city council on the valuation placed upon their property, and the council is powerless to repeal the provision of the law conferring the right. Nor can they deprive the tax-payer of its exercise, and enforce the collection of the tax. They fixed a time for a hearing, but for some reason failed to meet, thus as effectually depriving the tax-payers of their rights as if no time had been specified for the purpose. Failing to meet at the time named it was their plain duty to have fixed another time and given the notice required by their charter. For the failure to comply with this material requirement of the law the tax is void and cannot be collected."

On application for judgment the tax-payer has a right to present any defenses which go to the validity of the

tax. (Black on Tax Titles,—2d ed.—sec. 175.) Of course, the owner of the land in *Hough* v. *Hastings, supra,* might have had a writ of *mandamus* to compel the town board of review to meet, and the tax-payers of the city of Nashville, in the above case, might by like process have compelled the city council to hold a meeting; but so far as the sale of their lands was concerned it was wholly unnecessary, because the taxes could not be enforced in that way. An essential element of a valid assessment was wanting and the tax was therefore illegal. This is on the ground, clearly stated in the authorities on the subject, that notice and an opportunity to be heard are part of the "due process of law" guaranteed to the citizen, without which there can be no assessment. It makes no difference that the assessor valued the property if the owner was denied an opportunity to be heard by the board of review, because the valuation by the assessor was only one step in the assessment, and his action would be void unless followed by the meeting of the board of review and an opportunity to the tax-payer to be heard, which is just as essential as the original valuation by the assessor. *City of Nashville* v. *Weiser, supra.*

There was no valid assessment against the property of appellant in this case, since the agreed statement of facts shows that he was deprived of his constitutional right to a hearing by the board of review, and I can see no reason for requiring him to institute a suit the only object of which would be to compel a legal assessment. He did everything that a tax-payer is required by law to do, by filing his written complaint and using every reasonable effort to obtain a hearing. The duty rested on the taxing authorities to obey the law and on the board of review to grant him a hearing as a condition precedent to imposing the burden of taxation on his lands. The objection affects the substantial justice of the tax and comes within the provision of the statute. No court can say what the result of a hearing would have been,

and appellant would have been bound by the judgment of the board on such hearing, but, regardless of such questions, he could not be deprived of his constitutional right to the hearing. If there was no valid assessment he had a right to make that defense, and as the court could not assess the property or validate the illegal assessment it seems to me that judgment should have been refused. The offer of appellant to pay whatever tax had been charged against his land upon its actual value was a voluntary concession on his part, but it did not go beyond the amount so offered or justify the judgment entered.

I do not regard the decisions that equity will not interfere to restrain a tax where the party aggrieved has an adequate remedy at law as applicable to this case in any way. Equity rarely interferes with the assessment or collection of taxes. It requires the tax-payer to bring his case within some recognized head of equity jurisdiction and to show that he has no adequate legal remedy. It has been considered sufficient, in some cases, to refuse relief in equity that there was a remedy by *mandamus*, but I do not understand that a party is barred of one legal remedy which he has selected because he might have had another. *Mandamus* is one legal remedy, and in some cases and as to some forms of property it may be a very desirable one, but where the People seek to enforce a tax by the sale of lands the statute gives the tax-payer a remedy by way of objection to the validity of the tax. Appellant availed himself of that defense by objecting that there was no valid assessment. It seems to me that he is not barred from making his defense merely because he did not take up the burden of compelling a valid assessment by instituting a suit for that purpose.

Mr. JUSTICE HAND: I concur in the foregoing dissenting opinion.