THE PEOPLE *ex rel.* E. C. Akin, Attorney General,

*v.*

THE BOARD OF SUPERVISORS OF ADAMS COUNTY.

*Opinion filed April 17, 1900.*

1. MANDAMUS—*courts exercise judicial discretion in awarding or denying the writ.* In awarding or denying writs of *mandamus* courts exercise judicial discretion, and are governed by what seems necessary and proper to be done in the particular instance for the attainment of justice.

2. SAME—*mandamus will lie to compel county board to discharge duties enjoined by statute.* While the writ of *mandamus* cannot be invoked to control a county board in any matter in which its judgment and discretion are involved, it may be availed of to compel the discharge of duties specifically enjoined by statute.

3. COUNTY BOARDS—*power of county board to re-divide election district under order of court.* If a county board fails to act, at its July or August meeting, in the matter of re-dividing election districts, as provided in the act of 1899, amending section 30 of the Election acts of 1872 and 1895, (Laws of 1899, p. 209,) such board may take proper action, under authority of an order of court, at some other meeting, irrespective of its authority to act of its own motion at such time.

4. SAME—*county board must be governed by statute as to the number of voters in election district.* The act of 1899 (Laws of 1899, p. 209,) has fixed upon the number of votes cast at the preceding November election as the basis for re-dividing the election districts, and the county board cannot substitute its own judgment as to the number of votes likely to be cast at future elections.

5. CONSTITUTIONAL LAW—*the proviso concerning polling places at soldiers' and sailors' homes is constitutional.* The proviso to the act of 1899, (Laws of 1899, p. 210,) requiring county boards in counties where any State soldiers' and sailors' home is located to establish polling places, easy of access, on the grounds and within the enclosure where such home is located, is not in violation of section 22 of article 4 of the constitution, concerning special legislation.

6. ELECTIONS—*act of 1899, concerning polling places in soldiers' and sailors' homes, construed.* The general language of the act of 1899, (Laws of 1899, p. 210,) requiring polling places to be situated on a highway or public street, is qualified by and must give way to the second proviso to such act, which requires voting places for legal voters in soldiers' and sailors' homes to be established in convenient places upon the grounds and within the enclosures of such homes.

7. SAME—*right of persons not inmates to vote at polling places in soldiers' homes.*  If, in re-dividing the election districts and providing polling places at soldiers' and sailors' homes, an election district shall contain more territory than is covered by any such home, the legal voters of such territory may resort to the voting place provided, without hindrance from those in charge of such home.

ORIGINAL petition for *mandamus.*

E. C. AKIN, Attorney General, (C. A. HILL, and B. D. MUNROE, of counsel,) for petitioner.

JAMES N. SPRIGG, for respondent.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is a petition filed originally in this court by the Attorney General, representing the People of the State of Illinois, in his official capacity, the prayer thereof being that a writ of *mandamus* issue out of this court commanding the supervisors of Adams county, in this State, to re-divide and re-adjust the election districts in the town of Riverside, which includes the Soldiers' and Sailors' Home, so that each district shall contain, as near as practicable, 400 voters, and not more in any case than 450 voters, each district to be composed of contiguous territory and in as compact a form as can be, for the convenience of the electors voting therein; to describe such districts, and each of them, by metes and bounds, and number them, and also to fix and establish a polling place in each of said districts, and where such districts include or embrace said Soldiers' and Sailors' Home, or any part thereof, upon which the inmates thereof reside or are located, that the said board of supervisors be commanded to fix and establish the polling places for the inmates of said home at some convenient and comfortable place or places, easy of access, on the grounds and within the enclosure where the said home is located, and that said board of supervisors may also be required to appoint judges of election in and for each election dis-

185—19

trict, and in all respects comply with the provisions of section 30 of the Election law, as approved April 24, 1899. The cause was submitted on a general and special demurrer filed by the respondent board to the petition and joinder in demurrer by the petitioner.

It appears from the averments of the petition that at and prior to the general election in November, 1898, the town of Riverside, in the said Adams county, was divided into four election districts, and that at said general election 1454 votes were cast in the said four voting districts in said town, and that more than 450 votes were cast at that election in district No. 2 in said town. Section 30 of an act of the General Assembly entitled "An act in regard to elections and to provide for filling vacancies in elective offices," approved April 3, 1872, as amended by an act approved April 4, 1895, made it the duty of the respondent board of supervisors, at the regular meeting of the board required by the statute to be held in the month of July next after each regular November election, to re-district or re-adjust election districts in each town in said county in which more than 450 votes had been cast at the polling place in any election district at the said preceding November election.

The General Assembly, at the session of 1899, adopted an act changing the time of the regular meeting of the boards of supervisors in counties under township organization to the second Monday of June. This act, by virtue of an emergency clause incorporated in it, became valid and effective on the 22d day of April, 1899,—the date of its approval by the Governor. It thereby became the duty of the respondent board, at its June meeting in the year 1899, to re-divide and re-adjust the election districts in the town of Riverside, for the reason at the preceding general election in November, 1898, more than 450 votes had been cast at one of the election districts in the town. It appears from the averments of the petition the respondent board, at the June term, 1899, in obedience

to the statutes then in force, entered upon the duty of re-dividing and re-adjusting the election districts in the town of Riverside. The petition, however, avers that the said board omitted, failed or refused to re-divide and re-adjust the said election districts in said town in such manner as that not more than 450 voters should be contained in any one election district, but that said respondent board divided the said town, which contained 1454 voters at the last general election, into but three election districts. It is but a matter of mathematical calculation to know that some or all of these three election districts must contain more than 450 voters. If the three election districts were so adjusted that one-third of the voters of the town were to vote at each polling place, the number of such voters would be 484 at each of the three districts. The legal duty of the board was to divide the town into such number of voting districts, so, to quote the statute, "that each district shall contain, as near as may be practicable, 400 voters, and not more in any case than 450." It is therefore beyond dispute the respondent board failed or omitted, at its June meeting in 1899, to perform a duty which it stood charged by law to perform.

At the session of the General Assembly for the year 1899, on the 24th day of April, 1899, being two days after the act of April 22 before mentioned was approved and in force, said section 30 of the act of the General Assembly approved April 4, 1895, hereinbefore mentioned, was amended by adding the following proviso: "*Provided further*, that it shall be the duty of the county board in each county where any State soldiers' and sailors' home or homes are located, the inhabitants of which are entitled to vote, to fix and establish the place or places for holding such election or elections at some convenient and comfortable place or places, easy of access, on the ground or grounds, and within the enclosure where such State soldiers' and sailors' home or homes are located," —and so amended was re-enacted and became effective

as law July 1, 1899. Said section 30, as so amended and re-enacted, provided that the action to be taken by boards of supervisors with reference to re-districting or re-adjusting election districts in a town in which more than 450 votes had been cast in any election district at the preceding November election should be had at the regular (or a special) meeting of the board in the month of July next after the general election in November, and if not made at such July meeting might be made at an adjourned or special meeting of the board to be held in the month of August thereafter. In view of this latter enactment the respondent board, at its July meeting, 1899, as appears from the averments of the petition, adopted an order re-affirming the action it had taken at its June term, 1899, with reference to the re-division and re-adjustment of the election districts of the town of Riverside. The result of these proceedings of the respondent board provided but three election precincts for the 1454 voters entitled to vote in the said town of Riverside. It is manifest the respondent board has not complied with the duty enjoined upon it by law to re-divide and re-adjust the election districts in that town so that "each district shall contain, as near as may be practicable, 400 voters, and not more in any case than 450."

It is, however, urged, *mandamus* cannot be resorted to to enforce the performance by the respondent board of its duty in this respect, for the reason, as counsel insist, the board is without power to re-district or re-adjust election districts except when convened in session in July or August of each year. It is argued, boards of supervisors, if empowered to divide, re-divide and re-adjust election precincts at any meeting, might exercise the power at a meeting less than thirty days preceding an election, and thus, it is urged, practically disfranchise electors in such district or precinct; and further, that the legislature, in specifically naming the months in which such action should be taken by boards of supervisors, intended the

boundaries of election districts should be permanently fixed thus far in advance of elections in order that voters might have ample time and opportunity to ascertain and be advised as to the location of the polling place at which they would be entitled to vote. If it were asked to coerce a board, by the writ of *mandamus*, to take action at a period intervening between the month of August and the date of the election to be held in November these arguments and considerations advanced by counsel would no doubt be worthy of consideration, for courts, in granting or refusing writs of *mandamus*, exercise judicial discretion, and are governed by what seems necessary and proper to be done in the particular instance for the attainment of justice. Courts, in the exercise of wise judicial discretion, may, in view of the consequences attendant upon the issuing of a writ of *mandamus*, refuse the writ though the petitioner has a clear legal right for which *mandamus* is an appropriate remedy. (*People* v. *Ketchum*, 72 Ill. 212; *Oaks* v. *Hill*, 8 Pick. 47; 14 Am. & Eng. Ency. of Law, 97.) Action by the board, if now ordered, would not be attended with any of the evil results mentioned by counsel.

Nor do we think the prayer of the petition should be denied upon the ground that the court cannot lawfully direct the board to act at terms other than those to be convened in July or August. The case here presented by the petition is that the county board, at a term at which it was required to perform an official duty, took action as in performance of that duty but which clearly was not performance thereof, and the question is, may the court order the omission to be corrected by official action at a subsequent term, even if it be conceded the board has no power, of its own motion, to take such action at such subsequent term. It is the general rule, *mandamus* will not be granted in anticipation of a default or failure of official duty, and if the writ may not be availed of after the omission or failure has occurred the writ will become

inoperative in all such cases as the one at bar, and the observance or non-observance of the statutory requirement becomes a matter resting wholly within the uncontrolled discretion of boards of supervisors. Without regard to the question whether boards of supervisors, of their own motion, may act in the matter of re-dividing election districts at other than the July or August meeting if they omit to act as the law requires at such meetings, such boards may, under the authority of an order and judgment of the court, perform such duty at any other term, if so directed by such order and judgment.

It follows the petition justifies the award of a writ of *mandamus* directing the board of supervisors to divide election precincts or districts in said Riverside town so that each district shall contain, as near as may be practicable, 400 voters, and not more in any district than 450. The number of voters in a town or election district is to be determined from the number of votes cast at the general election held in the month of November last preceding the time at which the board is to act. The statute has established that as the only basis for the action of the board, and that basis must stand until it is changed by the result of subsequent general elections. The board cannot, as was here attempted to be done, substitute its judgment as to the number of electors "liable" to vote in said town, but must accept the basis fixed by the statute.

The Soldiers' and Sailors' Home created by the act of the General Assembly approved June 26, 1895, (Hurd's Stat. 1897, p. 244,) is located in the said town of Riverside, and the petition prays that said respondent board shall also be commanded by such writ of *mandamus* "to fix and establish the polling places for the inmates of said home at some convenient and comfortable place or places, easy of access, on the grounds and within the enclosure where said home is located," as required by the said proviso to said section 30 of the election statute. Counsel for the respondent insists the proviso added as

an amendment to said section 30 of the Election law by the act of the General Assembly adopted April 24, 1899, in force July 1, 1899, is in contravention of certain provisions of section 22 of article 4 of the constitution of 1870, and for that reason is void. Said section 22 of the constitution prohibits the enactment of local or special laws in any of the cases or instances therein enumerated. Among other subjects of legislation enumerated in said section as to which local or special laws are prohibited are, (1) "the opening and conducting of any election, or designating the place of voting;" "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise," and "in all other cases where a general law can be made applicable." The proviso grants privileges, with reference to the establishment or location of voting places convenient, in a special manner, to electors who are the inmates of the State Soldiers' and Sailors' Home or homes in the State. It grants equal privileges to all such inmates and to all institutions of the kind in the State. In that respect it is a general law. But that feature of the legislation is not sufficient to constitute the enactment a general law to the extent necessary to place it beyond the ban of the constitution. Not only must the law operate generally upon all the individuals composing a class to whom privileges are granted, but there must be a sound basis, in reason and principle, for regarding the class of individuals as a distinct and separate class of electors. A class cannot be created by arbitrary declaration of the law-making power and endowed with special legislative favors. It is essential to the validity of the classification, in such instances, it shall be based on material distinctions in the situation and circumstances of the individuals who are to be embraced therein, and the grounds of distinction and classification must have relation, in reason and principle, to the privileges proposed to be granted to the individuals, as a class, by the pro-

posed legislation. *Lippman* v. *People,* 175 Ill. 101; *People* v. *Martin,* 178 id. 611; *People* v. *Knopf,* 183 id. 410.

The act to establish and maintain a soldiers' and sailors' home in the State of Illinois, approved June 26, 1885, in force July 1, 1885, as amended by the act approved April 22, 1899, in force July 1, 1899, (Laws of 1899, p. 354,) provides: "All honorably discharged soldiers and sailors who served in the army or navy of the United States in the war of the rebellion, the Mexican war and the Spanish-American war, and have been residents of this State for two years immediately preceding the date of application for admission to the home, unless the service of applicants is accredited to the State of Illinois, and who are disabled by disease, wound or otherwise and have no adequate means of support, and by reason of such disability are incapable of earning their living, shall be entitled to be admitted to said home." The statute relating to the rights of inmates of the home to vote is as follows: "Every honorably discharged soldier or sailor who shall have been an inmate of any soldiers' and sailors' home within the State of Illinois for ninety days or longer, and who shall have been a citizen of the United States and resided in this State one year, in the county where any such home is located ninety days, and in the election district thirty days next preceding any election, shall be entitled to vote in the election district in which any such soldiers' and sailors' home, in which he is an inmate thereof as aforesaid, is located, for all officers that now are or hereafter may be elected by the people, and upon all questions that may be submitted to the vote of the people: *Provided,* that he shall declare upon oath, if required so to do by any officer of election in said district, that it was his *bona fide* intention at the time he entered said home to become a resident thereof." (Laws of 1887, p. 172.)

The individuals so declared to be electors in the election district where a soldiers' and sailors' home is

located, and in whose behalf the legislation under consideration was enacted, must be inmates of a soldiers' and sailors' home maintained by the State. Inmates of such homes consist, as has been seen, only of "honorably discharged soldiers and sailors who served in the army or navy of the United States in the war of the rebellion, the Mexican war and the Spanish-American war, and have been residents of this State for two years immediately preceding the date of application for admission to the home, unless the service of applicants is accredited to the State of Illinois, *and who are disabled by disease, wound or otherwise* and have no adequate means of support, and by reason of such disability are incapable of earning their living." The class to be favored by the proviso to the said section 30 includes only such soldiers and sailors as "are disabled by disease, wound or otherwise and have no adequate means 'of support, and by reason of such disability are incapable of earning their living." Argument cannot be necessary to demonstrate that those individuals, upon sound grounds of reason, principle and justice, may be properly regarded as composing a separate and distinct class of electors, whose situation and circumstances, as inmates of a home provided and maintained by the State, are such as to warrant legislative consideration and action appropriate to them as a class. The enactment which is designed to secure polling places readily and easily accessible to them, at which they may, with convenience and without discomfort, cast their ballots, has relation to those distinctions and differences which operate to justify the classification of such individuals into a class unto themselves, viz., their disabled condition, by wound or otherwise. It appearing the classification rests upon grounds of just and reasonable distinction, and that the legislation in question has relation to such grounds of difference and distinction, and is general as to all falling within the class, it follows the act is not special or local, but is

general in character and operation, and therefore not in contravention of the provisions of the constitution. The proviso is therefore legal and effective, and, as such, part of the section to which it is appended.

As we construe the proviso, in connection with the rest of section 30, it was the legislative intent that the polling places should be so located that every inhabitant of any soldiers' and sailors' home legally entitled to vote as a resident of such home might lawfully cast his ballot at a voting place established at some convenient and comfortable place, easy of access, on the grounds and within the enclosure where such home is located. This proviso was added to said section 30 by the amendment of 1899. (Laws of 1899, p. 209.) Its obvious purpose was to so qualify the rest of the section relating to the location of the voting places, or of a sufficient number of them, as to enable the legal voters residing at any such home to vote at convenient and comfortable places, easy of access, on the grounds and within the home enclosure. In *City of Chicago* v. *Phœnix Ins. Co.* 126 Ill. 276, we said: "In *Boon* v. *Juliet*, 1 Scam. 258, this court, at an early day, held that a proviso in a statute is intended to qualify what is affirmed in the body of the act, section or paragraph." And in *Gaither* v. *Wilson*, 164 Ill. 544, we said: "Its office (of a proviso) is generally to except something, or to qualify or restrain the generality of the section, or to exclude some possible ground of misinterpretation." See, also, *People* v. *Fidelity and Casualty Co.* 153 Ill. 25, *Dollar Savings Bank* v. *United States*, 19 Wall. 237, and *Minis* v. *United States*, 15 Pet. 445, where the same views are expressed by the Supreme Court of the United States.

Such being the evident purpose of the legislature in adding the proviso in question, it seems clear that if effect cannot be given to the proviso and at the same time to that part of the section requiring the voting place or places to be so located as to have the entrance to the room where the election is held, in a highway or public

street, the latter requirement must give way to that of the proviso. In other words, the proviso requires that the voting place or places for the legal voters of soldiers' and sailors' homes shall be established at places which are convenient, comfortable and easy of access, upon the grounds and within the enclosure of the home, whether there be any highway or public street at such places or not. Any other interpretation would make the requirement in the section which is general as to all, control that of the proviso which is general only as to the class or classes to which it applies, when, as we have seen, the clear meaning of the legislature was that as to the class or classes to which the proviso relates it should control, otherwise the proviso would be a useless and meaningless appendage to the statute. It is not meant to be said that the whole section should not be construed together so as to give effect to the whole, as far as practicable, but only that the general language of the section relating to the fixing of polling places must, in its application to soldiers' and sailors' homes, be qualified by, and, if necessary, give way to, the requirements of the proviso relating to such homes. It surely could not be contended that the enforcement of the amendment or proviso must be made to depend on the question whether there are public streets or highways upon the grounds or within the enclosure of such homes, or not. From the nature of the case it would hardly be expected that public streets or highways, used for all public purposes, would run through such grounds, so that voting places convenient, comfortable and easy of access to disabled soldiers and sailors could be located in rooms opening upon such public highways or streets; and it might well be that there would be no public street or highway so located, adjacent to the home or grounds, as to make it possible to locate the voting places as required by the amendment or proviso to said section 30. All this the legislature must have

had in mind when it enacted the proviso as an amend-
ment to and a qualifying clause of the original section.

If it be said that a voting place is a public place, and
must be so located that citizens cannot be excluded by
the trustees or others in charge of State institutions, it
is sufficient to say that in establishing such voting places
upon the grounds of the home, (which, for certain pur-
poses, are already public,) and at such places as required
by law and in the manner required by law, such voting
places, and the walks and driveways on the grounds of
the home leading from the gates and entrances of the
grounds of the home to the voting places, become public
ways and places on all days on which elections are held,
where all citizens may without interruption go, the same
as to other voting places.    If the precinct include other
territory, the legal voters thereof may resort to such
voting place as in other cases, without hindrance from
those in charge of the home.

It is urged that there is no allegation in the petition
that there are buildings within the grounds of the Sol-
diers' and Sailors' Home at Quincy having front rooms
on the ground floor, the entrance to which is upon a pub-
lic street or highway.    As we have seen, it is not essen-
tial that any such building of the home be so located with
reference to a public street or highway.

We see no difficulty in fully carrying into effect the
provisions of this statute.    The law is so framed as to
obviate any such difficulty.    It does not take from the
county board all discretion in forming districts and fixing
voting places, but only prescribes certain requirements
which must be complied with while exercising such dis-
cretion in other respects.    If, in observing the require-
ments of the statute relating to soldiers' and sailors'
homes, it is found that the distance which voters in other
parts of the township would have to travel to reach the
polling places provided for them would be too great, re-
lief may be given under the first proviso, which provides:

"That the county board may, if it deem it to be for the best interest of the voters of any town or precinct, divide any election precinct which contains more than 300 legal voters into two election precincts, same precincts to contain as near 200 voters as is possible."

While the writ of *mandamus* cannot be invoked to control the board in any matter in which the judgment and discretion of the board are involved, it may be availed of to control in the discharge of duties specifically enjoined by the statute.

It is therefore ordered that a writ of *mandamus* issue herein as prayed for in the petition, commanding the board of supervisors of Adams county to re-divide and re-adjust the election districts in said town of Riverside, including said Soldiers' and Sailors' Home, so that each district shall contain, as near as practicable, 400 voters, (subject, however, to the provisions of the first proviso above mentioned to said section 30, if found necessary to be applied by the board,) and not more, in any case, than 450 voters, each district to be composed of contiguous territory and in as compact a form as can be for the convenience of the electors voting therein, describing such districts by metes and bounds and numbering them; and also to fix and establish a polling place in each of said districts, and where such district or districts are in or embrace said Soldiers' or Sailors' Home, or any part thereof where the residents of such home reside, that said board be commanded to fix and establish the polling places for the inhabitants of said home at some convenient and comfortable place or places, easy of access, on the grounds and within the enclosure where said home is located, providing judges and clerks of election as in other cases. *Writ awarded.*