(No. 27547.—
RAY STROUD, Appellant, *vs.* M. C. McCALLEN, Appellee.

*Opinion filed January 18, 1944—Petition for rehearing stricken March 16, 1944.*

HARRY I. HANNAH, THOMAS R. FIGENBAUM, both of Mattoon, and WALTER C. KLITZING, of Altamont, for appellant.

G. F. TAYLOR, BYRON PIPER, and GEORGE H. BAUER, all of Effingham, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

At the general election held in Effingham county in November, 1942, appellant and appellee were opposing candidates on the Republican and Democratic tickets, respectively, for the office of county judge. The official returns of the canvassing board showed appellant had received 4240 and appellee 4317 votes, thus giving appellee a plurality of 77 votes. Thereupon appellee qualified and assumed the duties of the office.

Appellant filed a petition in the circuit court to contest the election. It was alleged that there were irregularities in the marking of ballots and error in the count, but the principal complaint was that the board of supervisors had at its regular meeting held in June, 1942, adopted a resolution undertaking to redistrict Douglas township into nine voting precincts which had prior thereto contained only five, and that such action was conducted in such an utter disregard of the statute as to render the election void as to that township. After disposing of numerous motions to strike parts of the pleadings and the filing of various amendments, issues were formed raising a question of law as to the legality of such subdividing, and a question of fact which called for a recount of the ballots.

A recount was started but when the ballots in five precincts had been counted, none of which was in Douglas

township, appellant waived a recount of the remaining precincts. The cause was submitted on the legality of the subdivision of the precincts in Douglas township, the ballots of the five precincts which had been recounted and the official returns of the other voting precincts. The decree entered sustained the redistricting of Douglas township and included the vote cast therein in the total for the county. The totals cast for the respective candidates were substantially the same as those shown by the election officials, and thereupon appellee was declared the duly-elected county judge of Effingham county. This appeal followed.

The only questions presented on this appeal pertain to the action of the board of supervisors in redistricting the voting precincts of Douglas township. The resolution which subdivided Douglas township also redistricted certain other townships and the character of a part of the attack is such that if it should be sustained as to Douglas township, it would necessarily follow that the same action would have to be taken as to the other townships which were included in the redistricting resolution. If all the ballots voted in the nine precincts in Douglas township are rejected and those cast in all the other voting precincts are included, appellant would have the greater number of votes. There is no fraud or misconduct charged against the actions of the board of supervisors or any of the election officials. It is not claimed that any elector voted in a precinct of which he was not a resident, nor is there any claim that any qualified elector was deprived of the right to vote.

The pertinent parts of section 30 of the Elections Act, (Ill. Rev. Stat. 1941, chap. 46, par. 30,) which was the statute in force when the redistricting occurred, provided that immediately after the statute was enacted the county board in counties having a population of less than 500,000 should divide the election precincts which contained more than 800 voters into election districts so that each district

would contain, as nearly as practicable, 500 voters and not more in any case than 800, that each district should be composed of contiguous territory and in as compact form as could be made for the convenience of the electors voting therein. It directed that each district should be given a number and should be described by metes and bounds. Subsequent redistricting made necessary by increase of the number of voters was provided for by directing that whenever it appeared by the number of votes cast at the general election held in November of any year that any election district or undivided election precinct contained more than 800 voters, the county board should, at its regular meeting in the month of June, or an adjourned meeting in the month of July next after such November election, redivide or readjust such election district. If for any reason said county board should fail in any year to redivide or readjust said election districts or election precincts, then said districts or precincts as then existing, should continue until the next regular June meeting of said county board; at which regular June meeting or an adjourned meeting in the month of July, such board should redivide or readjust said election district or election precincts in manner as therein required. It directed that the county board, in every case, should fix and establish the places for holding elections in the respective counties, and. that the elections should be held at the places so fixed.

Appellant contends that in redistricting Douglas township, the board of supervisors ignored the requirements of the foregoing statute in the following respects: (1) that the statute required the redistricting to be made at the June meeting or adjourned meeting in July following the last preceding November general election, which in this case would have been the June meeting of 1941; (2) that each precinct should be redistricted on a basis of a minimum of 500 and a maximum of 800 voters based upon the vote cast at the last preceding general election; (3) that the

statute required that each redistricted precinct should be described by metes and bounds so that the territory included could be definitely defined and located; and (4) that the county board failed to fix and designate a polling place in each precinct.

The preliminary question is as to whether the statute quoted in the particulars mentioned is mandatory or directory. Many cases involving the construction of election statutes have been before this court where the same question was determined. *People ex rel. Agnew* v. *Graham,* 267 Ill. 426, was one of such cases and, after a review of many decisions of this and other jurisdictions, it was held that a statute which imposed duties upon election officials of setting up election machinery, and which also directed, by express language, that the failure of the officials to execute the duties as imposed, at the time and in the manner specified, would render the election void, should be construed by the courts as mandatory; and that this should be without regard to the effect such omission of the officials to act had upon the result of the election or the propriety or impropriety of such a statutory requirement. It was also held that if the statute merely provided for the doing of an act within a particular time or in a particular manner, but did not declare that the execution of the.statutory mandate, in the time and manner specified, was essential to the validity of the election, then, in such case, the statute was to be construed as directory, unless it appeared that the failure to follow the statute affected the actual merits of the election and presented an opportunity where its influence would be reflected in the result of the election, in which event the statute would be construed as mandatory.

The fairness of elections is of vital importance, and to accomplish this purpose this court has adhered strictly to the rule that the legal safeguards which are thrown about conduct of elections by statute must be faithfully observed

by those entrusted with their enforcement but that, under the pretense of enforcing them, the will of the people should not be defeated by a mistake of election officials, if such mistake was honestly made and without fraudulent design. Under such circumstances, literal compliance with prescribed forms will not be required if the spirit and intent of the law is not violated. (*Weston* v. *Markgraf,* 328 Ill. 576.) It has been said in questions of this character "that form should be subservient to substance when no legal voter has been deprived of his vote and no injury of any kind has been done to anyone." *Weston* v. *Markgraf,* 328 Ill. 576.

As to the particulars referred to by appellant, the statute does not contain any provision which expressly directs that failure to follow the mandate of the statute as to those matters would render an election void. Therefore, under the rule announced in the *Graham case* and adhered to in later cases, if the statute is to be declared mandatory it must be because the failure of the officials to act, at the time and in the manner directed by the statute, has in some way affected the merits of the election. There is nothing in this case to indicate to the slightest degree that if the statute had been strictly followed, as appellant claims it should have been, the result of the vote would have been different in Douglas township. There is no claim that any qualified voter was deprived of his right to vote or that anyone voted who was not entitled to exercise the right. No proof is furnished to show that anyone voted in a precinct where he was not lawfully a resident. If there was such, the name and the circumstances under which he voted should have been shown. In view of the conditions of this record, the statute as to the particulars complained of much be construed as directory and not as mandatory.

It will be observed that the statute makes provision for redistricting in the event the board of supervisors fails to

take action at the June meeting following the last preceding general election, in that it directs that "if for any reason said county board shall fail in any year to redivide or readjust said election districts," then the existing districts "shall continue until the next regular June meeting of said county board; at which regular June meeting or an adjourned meeting in the month of July, said county board shall redivide or readjust said election districts." Instead of declaring that a redistricting consummated at a June meeting other than in the year next succeeding the last general election shall be void, it expressly declares it may be done at the regular June meeting or adjourned meeting in July in the second year following the last preceding general election. The action taken by the board in this case was within the time prescribed by statute and appellant's contention as to this point is without merit.

Appellant's second point is that in redistricting Douglas township the board did not give proper observance to the minimum and maximum number of voters that should be resident in the township. The evidence shows that at the November general election of 1940, when Douglas township contained but the five original precincts, there was a total of 4269 votes cast, thus making an average of a little more than 850 per precinct. At the 1940 election there were 211 votes cast in precinct No. 1; in precinct No. 5, 793, and in the other three there were more than 1000 in each one. It is apparent that the vote of the 1940 general election presented a condition where the board of supervisors was authorized to act and redistrict the township into voting precincts. The boundaries of precinct No. 1 were not changed and, on the basis of the 1940 election, it continued with 211 voters resident therein. This left 4058 voters in the remainder of the township to be redistricted into what the board considered would make eight precincts. If evenly divided, this would make an average of slightly more than 510 voters per precinct. The basis

of the redistricting was the 1940 election, and we have no means of knowing where the 4058 voters resided in reference to the boundaries of the new districts. In the absence of a showing to the contrary, we must assume that the board of supervisors performed its official duty so that the voters resident in each precinct were within substantial compliance with the number specified by the statute. Appellant's contention as to precinct No. 1 is that to leave it as formerly with 211 voters as a basis is not a redistricting in compliance with the statute. It will be noted the statute does not fix the minimum of 500 as an arbitrary number but declares it shall be as near 500 as "practicable." This gives the board of supervisors power to determine what is practicable and in the absence of proof indicating an abuse of that power, we must hold that the redistricting of the precinct with 211 votes was within the requirement of the statute.

Appellant relies upon *People ex rel. Akin* v. *Board of Supervisors*, 185 Ill. 288, which was an original *mandamus* action started in this court for a writ to command the supervisors of Adams county to redivide and readjust the election districts in the town of Riverside in that county. Included within the area of the town of Riverside was the Soldiers and Sailors Home. The statute under which the redistricting was sought provided that each precinct should contain as near as practicable 400 voters and not more in any case than 450. The gist of the action was to obtain a writ commanding the board to redistrict, so that the voting precincts would not have more than 450 legal voters resident therein. There was no question before the court that involved the fixing of a minimum. The statute then, as now, left it to the board of supervisors to determine the minimum number of voters that should be legally resident therein, subject only that it had to be as near 400 as practicable. In the case cited, this court directed the board to redistrict with a definite maximum

fixed, and what was said in that opinion is only applicable to the questions decided. It had nothing to do with the question presented and is not controlling. In this case we are asked to determine that the board's conclusion that 211 as a basic figure for precinct No. 1 was not within the range of the minimum requirement of voters as fixed by statute. This would require evidence to determine whether, under the circumstances, the board exercised its powers in an arbitrary and unreasonable manner, and in the absence of such evidence we cannot hold that the fixing of the boundaries of precinct No. 1, to include 211 voters based upon the 1940 election, was not as near 500 as was practicable under the circumstances.

Appellant's two remaining points are controlled by the same general principles and may be considered together. As noted, they refer to the fixing of the boundaries by metes and bounds description and the locating of the polling places. The evidence shows that the city of Effingham is located wholly within Douglas township. At no point do the boundary limits of the city and the township coincide. The Illinois Central and the Pennsylvania lines cross the township and intersect each other within the city limits of the city of Effingham. The descriptions followed in the resolution of the board of supervisors in redistricting the township adopted these railroad lines, certain streets in Effingham, township lines, and quarter-section lines as starting points or, in some instances, as the dividing line between the voting precincts. The descriptions set forth in the resolution as to two precincts will serve to illustrate. Precinct No. 6 was as follows: "All the within territory described as follows: From the east Douglas Township line to the west Township line south of the Pennsylvania Railroad to the north side of Wabash Avenue or the half section line of Sections 28, 29 and 30 running east and west," and voting precinct No. 9 was described as follows: "All the within territory described as follows: West of

the Illinois Central Railroad to West Douglas Township line and north side of Railroad Avenue to north line of Town 8, Range 6."

It is apparent that the foregoing descriptions are not by metes and bounds but there is evidence which reflects upon the good faith the officials exercised in fixing the voting precincts, which should be considered. George Thole, the supervisor of Douglas township, testified that he presided at a meeting of the town board of that township held May 27, 1942, at which time a map prepared by a resident of the township, who had formerly held the office of county treasurer of the county and assessor and justice of the peace of Douglas township, was present. This map was introduced in evidence as an exhibit, and it is sufficient to say that the resolution of the board of supervisors, in fixing the boundaries, follows, in a general way, the lines marked on the map as the boundaries of the district. It also appears that these maps, with full explanation as to their purpose, were given publicity by publication in three newspapers, two of them published in the city of Effingham and one in the village of Teutopolis, located in the township adjoining Douglas township on the east. The map, as prepared and published, was also on file in the office of the county clerk.

The resolution did not undertake to designate the polling places of these various precincts. The evidence shows that the supervisor of Douglas township located a voting place for each voting precinct. Election judges and clerks were duly named and, as far as this record discloses, faithfully performed their duties as election officials in their respective precincts. There was a failure on the part of the board of supervisors to follow the statute.

On these points, as well as the ones previously considered, appellant cites and relies upon *Rexroth* v. *Schein,* 206 Ill. 80. In that case the board of county commissioners of Monroe county undertook at its September meet-

ing preceding the election to transfer a portion of the territory included within New Design precinct to the precinct of Prairie du Long. That was an election contest case in which the parties were opposing candidates for the office of county treasurer. The questions as to redistricting arose on the questioned right of three voters, who lived within the transferred territory, to vote. It was held the board was without authority to detach the territory in the manner undertaken and that it did not create a new voting residence. That presented an entirely different question from the one under consideration. Here the attack does not raise a question as to the voting residence of any voters or the right to include their ballots as legal ballots but we are asked to reject the entire vote of Douglas township or, in the alternative, to at least reject the entire vote in a part of its voting precincts. Due to the difference between the questions raised, we do not regard the *Rexroth case* or the other cases relied upon by the appellant, such as *Welsh* v. *Shumway*, 232 Ill. 54, and other cases cited, as controlling in this case.

The facts presented on this appeal do not challenge the purity of the ballot or of the election. The questions raised are not such as to show circumstances that would ordinarily be expected to open the door to fraudulent practices in elections, such as the failure of an election official to perform a requirement of the statute in reference to identifying each ballot. The approval of the result of the election is limited to the restricted scope of appellant's objections under the facts shown, and is not to be taken as approval of the procedure followed in the redistricting and applied in every case where it might arise.

For the reasons assigned, the judgment of the circuit court is affirmed.

*Judgment affirmed.*