THE TOWN OF NAPLES *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF SCOTT *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0241

Opinion filed December 21, 1982.

GREEN, J., specially concurring.

Richard Collins, of Jacksonville, for appellants.

Ronald F. Robinson, State's Attorney, of Winchester, for appellees.

JUSTICE MILLS delivered the opinion of the court:

Can a Board of County Commissioners *consolidate* precincts under the Election Code?

No.

We reverse in part and remand.

Plaintiffs, the town of Naples and residents of that town, filed suit on March 30, 1980, requesting the court to declare invalid a resolution passed by the Board of Commissioners of Scott County. The resolution provided for redistricting the Naples, North Bluffs, South Bluffs, and Oxville voting precincts, so that each precinct was divided into two portions, and each portion was combined with a portion of each of the other three precincts in order to form three new precincts. The complaint further alleged that the old precincts ranged in size from approximately 111 voters to 352 voters and the newly formed precincts ranged from 202 voters to 332 voters.

Paragraph 12 of the complaint alleged the existence and effectiveness on the date the resolution was passed of sections 11—1 and 11—2 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, pars. 11—1, 11—2). These sections provided as follows:

"In counties not under township organization, the election precincts shall remain as now established until changed by the Board of County Commissioners, but said County Board may, from time to time, change the boundaries of election precincts and establish new ones. ***" (Ill. Rev. Stat. 1979, ch. 46, par. 11—1.)

"The County Board in each county, except in counties having a population of 3,000,000 inhabitants or over, shall, at its regular meeting in June, divide its election precincts which contain more than 800 voters, into election districts so that each district shall contain, as near as may be practicable, 500 voters, and not more in any case than 800. Whenever the County Board ascertains that any election precinct contains more than 600 registered voters, it may divide such precinct, at its regular meeting in June, into election precincts so that each precinct shall contain, as nearly as may be practicable, 500 voters." (Ill. Rev. Stat. 1979, ch. 46, par. 11—2.)

Paragraph 13 alleged the invalidity of the resolution since the above-quoted sections do not authorize consolidation of precincts, the old precincts did not meet the numerical standards authorizing change, the new precincts do not meet the numerical goals, and there is a general lack of authority to alter precincts in the manner undertaken. Paragraph 13 also alleged that the resolution was illegal and void since it was arbitrary and unreasonable and therefore constituted a violation of plaintiffs' rights to due process and equal protection under the Federal and State constitutions. Paragraph 15 alleges damages to plaintiffs by virtue of these violations.

A motion to strike certain paragraphs of the complaint as immaterial was filed and granted as to paragraphs 12, 13, 14 and 15. The court gave leave to plaintiffs to file an amended complaint. Following a denial of plaintiffs' motion to reconsider, plaintiffs filed a complaint containing the identical essential allegations contained in and stricken from the first filed complaint. The court granted defendants' motion to dismiss the second complaint.

The questions of whether the stricken paragraphs are material and whether the complaint states a good cause of action are one and the same. If the paragraphs are material, the complaint is good and vice versa. The answer is dependent upon statutory interpretation of

sections 11—1 and 11—2. (However, the issue of the materiality of paragraphs 13(e) and 14 is waived pursuant to Supreme Court Rule 341(e)(7) since it was not argued on appeal (87 Ill. 2d R. 341(e)(7)).

Defendants contend the stricken paragraphs were immaterial since section 11—2 concerns division of existing precincts and there were no allegations that the existing precincts were divided. It is also implied that the resolution was in fact authorized by the broad language of section 11—1. Defendants conclude that since these statutes do not prohibit the consolidation of voting precincts they are immaterial when placed in context with allegations the statutes were violated by consolidating precincts. Essentially it is argued that the allegations are immaterial because they fail to state a cause of action. Plaintiffs, however, argue that section 11—2 entirely controls and limits the exercise of the seemingly broad grant of power in section 11—1. Plaintiffs imply that any action not authorized by section 11—2 is prohibited. Therefore, their allegations that the resolution violates sections 11—1 and 11—2 are material.

Plaintiffs support their contention that section 11—2 controls section 11—1 by citing *County Board v. Short* (1898), 77 Ill. App. 448, and *Rexroth v. Schein* (1903), 206 Ill. 80, 69 N.E. 240. In both of those cases, construing the statutory predecessors to the present sections 11—1 and 11—2, it was held that the times at which a county board may alter precinct boundaries was controlled and limited by the time stated in the predecessor statute to 11—2, notwithstanding language in the predecessor statute to section 11—1 that changes may be made "from time to time." Plaintiffs also note *People ex rel. Akin v. Board of Supervisors* (1900), 185 Ill. 288, 56 N.E. 1044, where a writ of *mandamus* issued requiring the board to readjust the precinct boundaries to comply with the numerical mandate of the statute since it was clear that the redistricting attempt of the board did not comply with the numerical standards of the predecessor statute to section 11—1. Although that case did not explicitly discuss the effect of the numerical requirements of the predecessor statute to section 11—2 on the seemingly broad grant of authority to alter precincts found in the predecessor statute to section 11—1, plaintiffs conclude that section 11—2 is controlling.

Plaintiffs and defendants note two conflicting Illinois Attorney General opinions. In the first opinion, it is merely stated that there is no indication anywhere in section 11—2 of a legislative intent that the county board be given the power to consolidate election precincts. Therefore, it was concluded the boards had no such power. (1976 Ill. Att'y Gen. Op. 139.) The second decision noted the broad language of

section 11—1 along with the language of section 11—2. The opinion states that the board was "given power to change the boundaries of election precincts and establish new ones. In doing so and in complying with the required population ranges per precinct, it seems inevitable that one or more precincts might be eliminated." (1979 Ill. Att'y Gen. Op. 60, 61.) Since a county has all the implied powers necessary to effectuate its expressed powers, the opinion concluded it was implied that the board had power to consolidate districts. Neither opinion cited the above discussed cases, and the latter opinion did not note the previous opinion.

Defendants point out that the holdings in *Rexroth* and *Short* were limited to a finding that section 11—2 controls the time at which the power granted in section 11—1 may be exercised. Such a holding does not require that section 11—2 be found to entirely control and limit the grant of power in section 11—1. Furthermore, defendants argue the second Attorney General opinion is more persuasive since it considered section 11—2 in conjunction with section 11—1. Defendants' only other argument is that section 11—1 would be entirely unnecessary if the board only had the power stated in section 11—2.

■ Although the parties' arguments center on the power of the board to consolidate precincts, the general question is whether section 11—2 entirely controls and limits the grant of authority in section 11—1. We believe section 11—2 does control under the rationale of *Rexroth* and *Short* as well as independent statutory interpretation. Although *Rexroth* and *Short* were limited in their holdings to a determination that the time limits of section 11—2 control section 11—1, both courts noted that the sections were *in pari materia* and must be construed together. *Rexroth* stated in *dictum* that 11—2 "controls the time *and manner* of the exercise of the power" in section 11—1. (Emphasis added.) (206 Ill. 80, 90, 69 N.E. 240, 244.) The *Short* court found it clear that the words "from time to time" in section 11—1 meant at the time stated in section 11—2. However, the court noted that even if this were not so clearly manifest, the same interpretation would be reached because of the absurdity of allowing the board "within the last ten days prior to an election, to create any number of new election precincts, and change the boundaries of all the precincts in the county, thereby to destroy all the election districts, thus rendering all the provisions of section 30 [section 11—2] nugatory, and making performance of most of the provisions of the election law absolutely impossible." (77 Ill. App. 448, 453.) Once again, although the holding was limited to the interpretation of the time limitation, we also find that defendants' interpretation is absurd since it would allow

the board to alter precincts in any manner they desired and render the provisions of section 11–2 nugatory. While defendants have asserted that section 11–1 is wholly unnecessary if given the interpretation urged by plaintiffs, we believe the converse is true. The essence of section 11–1 is that the precincts shall remain the same until changed and the board may change them. Standing alone, this is absurd. The statement that the precincts shall remain the same is totally superfluous unless section 11–1 is read as stating the broad policy that election precincts shall remain as established until changed at the times and in the manner authorized by section 11–2.

■ Finally, we reject the rationale of the Attorney General's second opinion which found that consolidation would necessarily be unavoidable in some instances and therefore consolidation was an implicit power. To comply with the required population ranges per precinct does not require consolidation since the number of voters per precinct is merely a goal, not a requirement, to be attained by dividing precincts under conditions authorized by section 11–2. If a precinct having over 600 voters is divided so that there are just over 300 voters in each district rather than the goal of 500 voters per district, the failure to reach the goal of 500 voters does not authorize consolidation with other districts to attain that goal. Therefore, there is no implicit power, and we conclude that section 11–2 entirely controls section 11–1.

■ Defendants would still contend that the allegations regarding sections 11–1 and 11–2 and violations thereof are immaterial since, even though these sections may not authorize redistricting in the manner undertaken by the resolution, the sections do not prohibit it. As long as the sections do not prohibit such actions they are no more material than any other statute which does not authorize the actions. However, as discussed above, the sections, when construed together, reveal a legislative intent that they provide the exclusive time and manner for altering precincts. Since they are exclusive they constitute, by necessary implication, a prohibition upon any other manner of reprecincting. Therefore, we find the statutes do in fact prohibit the effect of the resolution as alleged, and the statutes and alleged violations thereof are material such that the complaint states a cause of action with these allegations.

The trial court also struck as immaterial a subparagraph alleging the resolution was invalid because it was arbitrary and unreasonable and therefore a violation of plaintiffs' rights to due process and equal protection under the Federal and State constitutions. We fail to see how this allegation could be immaterial. The complaint would state a

valid cause of action if this were the only stricken allegation to be reinstated.

The mere existence of this cause of action, and the Attorney General's conflicting opinions, reveal that some county commissioners have felt that county boards do have the power to consolidate election precincts. The attempts at consolidation reveal that some commissioners believe that the power of consolidation would be an effective tool in the efficient redistricting of precincts. We conclude that these circumstances merit consideration and urge the legislature to reevaluate the relevant statutes for purposes of clarification and possible amendment, authorizing consolidation of election precincts if no valid objections are raised.

■ Although we construe section 11—2 to be *mandatory* in the present case, to the extent that improper redistricting has previously occurred and elections held in reliance thereon, we construe the statute as *directory*. Our supreme court has previously construed section 11—2 as being either mandatory or directory, depending on the consequences attendant thereto. (Compare *Rexroth* with *Stroud v. McCallen* (1944), 386 Ill. 103, 53 N.E.2d 422. See also, 2A Sutherland Statutory Construction secs. 57.07, 57.25 (4th ed. 1973).) We believe that where violations of section 11—2 have already occurred and no suit has been filed prior to elections being held in reliance upon the improper redistricting, practicalities and common sense require that the statutes be classified as *directory* in order that the alterations cannot now be determined to be invalid or void.

■ In the present case, however, we interpret the statute to be *mandatory* under the authority of *Board of Supervisors*. The fact that an election has been held since the improper redistricting is not a major obstacle to granting proper relief. Section 11—2 authorizes redistricting when the county board "ascertains that any election precinct contains" the required number of voters. The number of voters in the precincts as they were constituted prior to this attempted redistricting may be determined from voter registration records of the last general election, such that any redistricting required or permitted by section 11—2 may be carried out as if the improper redistricting had not occurred.

In sum, we reverse the order dismissing the complaint since we find that all stricken paragraphs were material, except for subparagraphs 13(e) and 14, upon which argument was waived.

Reversed in part and remanded.

LEWIS, J., concurs.

JUSTICE GREEN, specially concurring:

I concur with the decision of the majority to reverse the order dismissing the complaint. I agree that it does state a cause of action.

I further agree that sections 11—1 and 11—2 of the Election Code must be considered together. The mandatory requirement of section 11—2 to change boundaries when a precinct has a voter population exceeding a certain number (now 800) is consistent with a general discretionary power to do so arising from section 11—1. However, the provision of section 11—2 authorizing but not requiring boundary changes when a precinct has a voter population in excess of a certain number (now 600) would be totally useless if section 11—1 already gave that power. Moreover, the self-sufficiency of section 11—1 is further suspect because of its failure to make any express grant of power to change precinct lines to governing boards in counties under township organization. Thus, I agree with the majority's determination to follow the dictum of *Rexroth* that section 11—2 controls both the time and manner of making these changes.

The complaint here alleges that no precinct altered had a voter population in excess of 600 voters. As section 11—2 gives no authority to change boundaries in the absence of a precinct of that size, the majority correctly holds that the complaint stated a cause of action. I deem the existence of such a precinct to be the necessary element to trigger the power to remap. I do not agree with the breadth of the majority opinion which states that consolidation of precincts is impermissible and seems to indicate that the only action a governing board can take is to divide an existing precinct into one or more precincts. At the time of *Rexroth*, as now, the predecessor to section 11—2 spoke of the board dividing or readjusting the precincts. This would imply that portions of an existing precinct may be added to an existing precinct or even that precincts may be totally consolidated if done pursuant to a scheme to reduce one or more excessively large precincts.

In *Stroud*, several precincts in a township had a population of more than 800 voters, so the county board made a readjustment of precincts creating several more. One of the original precincts had only 211 voters. The board made no change in the boundaries of that precinct. Answering a contention that the failure to enlarge the precinct was improper, the supreme court stated that absent evidence that the board was arbitrary or unreasonable in failing to do so, no impropriety was shown. Had the supreme court thought the board lacked

power to consolidate a portion of another precinct with that precinct, it would have so stated.

The majority wisely notes that many counties have probably redrawn precinct lines in violation of its holding and properly follows *Stroud* to state that such a violation will not vitiate an election. Nevertheless, substantial difficulty may arise in these counties from merely being required to remap their precincts. The statutory language is confusing and, as stated, urgently requires legislative clarification. In the meantime, I would not interpret it as narrowly as the majority. I would permit additions of all or part of one precinct to another if done in conjunction with the reduction of a precinct with over 600 voters.